UNITED STATES of America,
Plaintiff,

v.

VAN RAALTE CO., Inc. and Arthur Klein, individually and as an officer of said corporation, Defendants.

No. 69 Civ. 306.

United States District Court,
S. D. New York.

June 29, 1971.

———◆———

Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New

York, for plaintiff; by Peter A. Herbert, Asst. U. S. Atty., New York City.

Sullivan & Cromwell, New York City, for defendants; by William E. Willis, William ' R. Norfolk, Mack M. Braly, New York City, of counsel.

GURFEIN, District Judge.

This is a motion by the defendant Van Raalte Co. Inc. to dismiss the supplemental complaint of the United States pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The supplemental complaint alleges that in 1956 the Federal Trade Commission charged Glensder Textile Company (Glensder) and its President Arthur Klein (Klein) with having violated the Flammable Fabrics Act, 15 U. S.C. Section 1191, et seq., under the Federal Trade Commission Act, 15 U.S. C. Section 45(a), on the ground that Glensder, under the direction of Klein, imported into the United States and sold articles of wearing apparel which were so highly flammable as to be dangerous when worn. In April 1957 an order to cease and desist was entered by the FTC Hearing Examiner ordering Glensder, its officers and other respondents, including Klein, individually and as officers of said corporation and respondents, representatives, agents and employees directly or *through any corporate or other device* to cease and desist from importing into the United States or selling the articles aforementioned (emphasis supplied). In July 1957 this order became final and is still in effect. In July 1966 Glensder, a Delaware corporation, became a wholly owned subsidiary of defendant Van Raalte. Klein served as President of Glensder before and after Van Raalte's acquisition of Glensder. The Government alleges that on or about August 26, 1969 Glensder was dissolved as a corporation and "merged" with its parent company Van Raalte, thereupon becoming Van Raalte's "Glentex Division." Following the 1969 "merger" Klein was retained as Vice President in charge of the Glentex Division. It is al-

leged that prior to the "merger" with Van Raalte of August 26, 1969 Glensder made 29 illegal sales of the flammable scarves. It is further alleged that subsequent to the "merger" the Glentex Division of Van Raalte made 2 sales in violation of the terms of the order of the Federal Trade Commission previously referred to. The Government further alleges in conclusory fashion that as a result of the "merger" of Glensder with its then parent company defendant Van Raalte, Van Raalte became subject to the mandates of the order aforementioned and liable for any and all violations thereof including any and all violations previously committed by Glensder. For each sale constituting a violation of the order the United States prays that the defendants, pursuant to 15 U.S.C. Section 45(l), shall forfeit and pay to the United States $5,000 in civil penalties for a total of $175,000 and that the defendants be enjoined from further violating the order. The total amount claimed with respect to Glensder's violations prior to the commencement of the original action by the Government amounted to $145,000. The total claim in the supplemental complaint of $175,-000 is based on six additional violations of the 1957 cease and desist order, four of which were allegedly committed by Glensder subsequent to the commencement of this action and two by Van Raalte's Glentex Division following the August 26, 1969 "merger."

The defendant Van Raalte claims that the supplemental complaint should be dismissed upon the ground that Van Raalte was not a party to the original proceedings in the Federal Trade Commission against Glensder; that Van Raalte had no notice of the 1957 order; and that the mere acquisition of all the assets of Glensder and its dissolution was insufficient to subject Van Raalte to liability.

■ The motion is misconceived as a short summary of the chronology will indicate. The basis of Van Raalte's motion is, in substance, that it has no primary liability for violations of the 1957

cease and desist order entered against a company with which it had no connection until 10 years later. Van Raalte claims that the Government is not seeking recovery against Van Raalte as one *secondarily* liable for the penalties incurred by its subsidiary prior to the time Van Raalte acquired its assets, but, rather, as a party primarily liable under the 1957 order. Van Raalte in its reply memorandum concedes, moreover, that the motion to dismiss is addressed to the issue of *primary* liability "alone." The concession defeats the motion. For the movant is conceding that the Government does, indeed, claim that Van Raalte is liable for penalties incurred by Glensder in the same manner as any company may be liable for the debts and obligations of a company which it acquires in the circumstances at bar. But Van Raalte argues that the theory of the supplemental complaint is one of the primary liability of Van Raalte rather than of its *secondary* liability. The movant goes on to concede that "if it were (a complaint based on a theory of secondary liability), this motion very well might not be before this Court." It is clear, however, that under the modern Federal practice of notice pleading the precise theory upon which the claim for relief was based need not appear in the complaint. It is sufficient if any claim for relief is stated.

■ I am required to follow the mandate of the Supreme Court in Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) when it stated:

"In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[1]

■ Between April 1, 1968 and April 9, 1969 Glensder made 33 sales of wearing apparel allegedly in violation of the order. When Van Raalte acquired the assets of this wholly owned subsidiary and dissolved it as a corporation on August 26, 1969 the original complaint in this action had already been filed by the Government (on January 27, 1969). It can hardly be supposed that a denuding of the assets of a corporation which is a defendant in a suit by the Government for violation of a cease and desist order can give the acquirer immunity from liability, at least as a transferee. Walling v. James V. Reuter, Inc., 321 U.S. 671, 674–675, 64 S.Ct. 826, 88 L.Ed. 1001 (1944). Moreover, the order of April 1957 itself initially enjoined Glensder from violating the order "directly or through any corporate device." Before the 1969 transfer of assets Van Raalte had already (since 1966) owned 100% of the Glensder stock. It was in every sense in control of that corporation when the alleged violations occurred in 1968 and early 1969. And enforcement against the transferee of a business may be applied in fuller measure in furtherance of the public interest than if only private interests were involved. See Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789, and cases cited therein. Walling v. James V. Reuter, Inc., *supra*, 321 U.S. at pp. 674–675, 64 S.Ct. 826.

■ In the plan of complete liquidation of Glensder in connection with the distribution of all its assets to its sole stockholder, Van Raalte, the latter assumed "all the liabilities and obligations of the company." The obligation of Glensder at that point was very much in being and actual notice had been given to it by virtue of the Government's original complaint of January 27, 1969. Even if Van Raalte had no notice of the actual consent decree of 1957 when it purchased the stock of Glensder that entity passed its existing obligations to Van Raalte at the time Van Raalte as-

---

1. If the claim of secondary liability was introduced in a post-trial brief for the first time, the result might well be different. See Jaffee & Co. v. Securities and Exchange Commission, 446 F.2d 387 (2d Cir. June 18, 1971).

sumed its liabilities in 1969. Whether the acquisition of assets and the simultaneous liquidation of a corporation constitute a de facto merger is something on which the parties differ. The Court does not believe that in view of the analysis heretofore made the theory upon which the Government proceeds is the crucial point. For surely there was the equivalent of a de facto merger by the acquisition of all the assets in exchange for the stock held by the acquirer and its assumption of all liabilities and obligations. Hoche Productions v. Jayark Films Corp., 256 F.Supp. 291 (S.D.N.Y. 1966). See 15 Fletcher, Cyc. Corps. Section 7122 (1961 Ed.). If the Government can prove its case, Van Raalte standing in the shoes of Glensder would be liable for penalties. Counsel for Van Raalte seemed to have recognized this earlier when they moved to have Van Raalte substituted as *the* corporate party defendant in the place of Glensder and the Government consented.

The question remains as to whether Van Raalte is suable on its own for importations or sales made subsequent to its acquisition of Glensder's business. Van Raalte stoutly maintains that since it was not a party to the original cease and desist order it cannot be bound by it. It cites the recent case of United States v. Armour & Co. and Greyhound Corp., in 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256. In that case the Supreme Court did hold that the failure of a decree to provide that it shall run not only against the named persons but also "against their successors and assigns" is fatal to the claim that the decree affected the acquiring corporation in that case. Although in the instant case the Federal Trade Commission order does not provide that it be binding upon successors and assigns, the situation may nevertheless be different because of the business activities of Glensder as a wholly owned subsidiary and then as a division of Van Raalte with defendant Klein serving as the head of operations on behalf of Van Raalte throughout. The *Armour* case did not involve the combination of *related* corporations but was strictly an arms-length transaction between unrelated parties for the acquisition of stock—conduct which was *not* specifically prohibited by the 1920 consent decree. Unlike *Armour,* in the instant case the Government seeks to recover penalties for the *exact* conduct proscribed by the FTC order. Moreover, in *Armour* there was no suggestion that a major purpose of that acquisition of stock might be to defeat the efficacy of the prior consent decree. In the instant case, the defendants cannot be free of that possibility at this stage of the litigation. More exploration of the facts by discovery would be required to set the matter at issue for judicial determination.[2] The question of whether the Government's prayer for an injunction against Van Raalte will lie had better be left to the conclusion of a trial in view of the corporate transactions mentioned. See P. F. Collier & Son Corp. v. F.T.C., 427 F.2d 261 (6th Cir. 1970). It is difficult to predict at this stage what matters may be developed that will have a bearing on the question of relief. The Government may, in the meantime, be well advised to amend its supplemental complaint to state more precisely its alternative claims for relief against Van Raalte.

The motion is in all respects denied.

---

2. While Regal Knitwear Co. v. N.L.R.B., 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1945) may be taken as holding that an order against "persons who act independently and whose rights have not been adjudged according to law" would be too broad, the Court did "not undertake to decide whether or under what circumstances any kind of successor or assign will be liable for violation of a Labor Board order" (324 U.S. at 15, 65 S.Ct. at 481).