**PRUDENTIAL OIL CORPORATION,**
**Plaintiff,**

v.

**PHILLIPS PETROLEUM COMPANY,**
**Defendant.**

**No. 67 Civ. 3748–CLB.**

United States District Court,
S. D. New York.

March 3, 1976.

Gold, Farrell & Marks by Thomas R. Farrell, Leonard M. Marks, New York City, for plaintiff.

Sullivan & Cromwell by Robert Mac-Crate, David B. Rigney, Richard J. Urowsky, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By a general verdict, amplified and supplemented by the answers to Special Interrogatories, the jury in this diversity case on January 26, 1976 found that plaintiff's corporate predecessor, Prudential Oil Corporation (Connecticut), acting through Messrs. Shippee, Willey and Young, developed and owned a legally protected business concept, as defined in the Court's instructions, relating to the establishment of a petrochemical core facility in Puerto Rico; that Phillips obtained disclosure of this legally protected business concept as a result of a relationship of trust and confidence with plaintiff's predecessor; that Prudential disclosed its concept to Phillips or made a contribution of ideas or services relating to the development of those ideas as a result of a contract implied in fact; and that Phillips used Prudential's legally protected business concept or contribution of .ideas or services relating to the development of those ideas of Prudential Connecticut in the petrochemical core facility actually constructed by Phillips in Puerto Rico, or in an application or presentation necessary to effect its construction.

The jury then awarded damages in the amount of $1,500,000.00 and advised further that the tortious misappropriation or the taking of the ideas pursuant to a contract implied in fact, occurred on December 16, 1963.

By motion filed February 17, 1976, defendant moves for judgment notwithstanding the verdict. Its contentions are dealt with separately below.

## I

Defendant first contends that a contract implied in fact was not shown to exist by the required standard of proof which, resolving all matters of credibility and weight, favorably to plaintiff, would permit any juror reasonably so to conclude.

■ The parties have tried the case in accordance with the substantive law of New York, and there are sufficient contacts with New York to justify such a choice of law. In New York, when something of value is tendered by one party to another for evaluation, looking towards a mutually beneficial commercial agreement, and the second party accepts, takes and uses what is tendered, without reaching an express agreement, a contract implied in fact may be said to arise. *Robbins v. Frank Cooper Associates,* 19 A.D.2d 242, 241 N.Y.S.2d 259 (1st Dept. 1963), *rev'd. on other grounds, but rule approved,* 14 N.Y.2d 913, 252 N.Y. S.2d 318, 200 N.E.2d 860 (1964); *American TCP Corp. v. Strauss Stores Corp.,* 206 Misc. 1017, 136 N.Y.S.2d 76 (N.Y.Co.Sup.1954), *aff'd.* 285 App.Div. 1132, 140 N.Y.S.2d 884; . Restatement, Restitution, § 107(2).

■ There is ample evidence here to support a conclusion that Prudential's principals delivered their work product to Phillips, anticipating an agreement to enter upon a joint venture. No such joint venture agreement was ever made by Phillips. Having failed to enter into a joint venture, as was its right, Phillips became liable in *quantum meruit,* or pursuant to a contract implied in fact, for the value of what it took and used.

■ Indeed, depending on the circumstances, almost any taking of a legally pro-

tected concept, following business negotiations between the owner of the concept and the taker, can justify a jury finding of a contract implied in fact. This is so because the presumption is in favor of innocence and against the existence of fraud. This presumption against fraud, although not comprised within the instructions given our trial jury, is particularly strong. See *Richards v. Kaskel,* 40 A.D.2d 804, 338 N.Y.S.2d 279, 281 (1st Dept. 1972) and cases therein cited. It justifies a finding of a contract implied in fact, rather than a finding of tortious wrongdoing, to the extent that Phillips' access to the concept was through Phillips' employee Fischbeck.

This jury verdict will not be voided now at defendant's behest, simply because of any theoretical inconsistency between a contract implied in fact, and a tortious misappropriation of the legally protected business concept.

This is so because no objection was taken on this ground to the form of special interrogatory submitted to the jury. See transcript p. 2199, *et seq.* where defendant requested other changes in the form of interrogatories to the jury, culminating with the following (Tr. p. 2205):

THE COURT: "The purpose of the interrogatories primarily is to protect everyone's interests, including the Court, so we will know how the jury got there. If you all wanted to take a general verdict, I would probably permit it, but I gather you don't.

MR. MacCRATE (defendant's counsel): No, your Honor, we do want these special interrogatories."

Defendant contemplated the likelihood that the jury would hold in favor of plaintiff on more than one theory. Nothing on the form of interrogatories militated against such a result. The Court instructed the jury without exception (Tr. pp. 2266–67):

"Although more than one theory of liability has been presented to you for your determination, the plaintiff may recover only once for its damages, if you find that it has been damaged.

Since the different theories of liability suggest different computations of damages, if you find the defendant liable on two distinct theories and you find in computing the damages as I have instructed you that different amounts of damages are applicable, you should award the plaintiff damages in the larger of the two amounts."

It is now too late to claim such an instruction was improper.

Indeed, after the plaintiff had rested, defendant presented the testimony of Roy M. Waldby, its Manager of Puerto Rican operations, from which it became abundantly clear that defendant had in fact misappropriated plaintiff's concept, and had done so tortiously. Mr. Waldby testified on his direct examination (Tr. p. 1666):

"Q  Well, did you also have an assignment with respect to a Puerto Rican project?

A  I did.

Q  Now, how did that come about; can you tell us the circumstances?

A  On or about August the 7th [1963], Mr. Miller Conn, my superior, . . . called me into his office after a visit which I understood from him to be with Oscar Chapman of Washington, D.C., and told me that we had an opportunity to obtain permission to bring in large quantities of feedstock, into Puerto Rico, if we could make better than fifty percent petrochemicals from them, and he asked me to apply myself to the problem as to how we could produce those volumes of petrochemicals.

\*    \*    \*    \*    \*    \*

Q  Mr. Waldby, did Mr. Conn give you any materials, any papers at that time?

A  Yes, sir, he did. I'm not sure whether in his office or on the way out of his office, but in that time period, yes, sir.

\*    \*    \*    \*    \*    \*

Q  I show you now the original exhibit [P–215], Mr. Waldby, and ask you if that was used in the materials given to you by Mr. Conn at that time in August of 1963.

A  Yes, sir, to the best of my—it is now my belief that this was among the materials given to me by Mr. Conn.

Q  Did Mr. Conn tell you anything about the materials that he gave to you at that time?

\*    \*    \*    \*    \*    \*

A  Mr. Conn told me that the material which he gave me was to be treated confidential."

Exhibit P–215 was a brochure prepared by Prudential, with Prudential's name on it. Oscar Chapman, a Washington, D.C. lawyer, had acted for Prudential, and later, for Phillips. If believed, the foregoing testimony shows intent to misappropriate Prudential's brochure and its contents, and use it in aid of an application by Phillips to implement a petrochemical core plant in Puerto Rico, and although not known to plaintiff prior to trial, justifies and supports a verdict on the tort claim.[1]

II

Defendant also claims it is entitled to a partial judgment *n. o. v.*, dismissing so

---

1.  Plaintiff tried its case on the factual contention that Phillips had access to Prudential's brochure (Exhibit P–215), as shown by the fact that certain verbiage of marginal utility had been plagiarized *verbatim* in a brochure which Phillips later submitted in its own behalf to officials of the Economic Development Administration ("EDA") of the Commonwealth of Puerto Rico. In support of this theory, plaintiff showed that its brochure had been made available previously to Dr. Dale Fischbeck, Phillips' man in New York, who, as a courtesy to Pru-

dential, had caused the brochure to be reproduced by Phillips' photocopy facilities.

It was not until defendant proffered the testimony, recited herein, of Roy Waldby that plaintiff realized that the more probable means of access was not from Prudential to Fischbeck to Waldby to the EDA, a mode of access consonant with the theory of a contract implied in fact, but rather that access was from Prudential to its attorney Oscar Chapman, to Conn of Phillips, who in turn delivered Prudential's brochure to Waldby with a direction to keep it confidential. Waldby was in charge of produc-

much of the claim as is based upon the theory of a breach of contract implied in fact, on the ground that the claim is barred by New York CPLR § 213 as having arisen more than six years prior to January 16, 1976, the date during trial upon which the plaintiff moved to conform its allegations to its proof. This latter motion was of course, advisable, but unnecessary. See Rule 15(b), F.R.Civ.P.

The taking took place on December 16, 1963, and this action was filed on September 27, 1967. The complaint was sufficient to set forth a claim for relief based on a contract implied in fact. It complied fully with Rule 8, F.R.Civ.P., in that it contained a statement of the jurisdictional grounds, [diversity] and set forth in greater detail than usual the claimed transactions concerning the Puerto Rican petrochemical core refinery. The pleading was sufficient to give defendant notice that it was being held in damages, and for equitable relief, arising out of its transactions with plaintiff and the Commonwealth concerning the Puerto Rican core refinery, consequent upon and following defendant's letter to plaintiff dated November 12, 1962, which was actually attached to the pleading. The parties were not strangers to each other, and by the time the pleading had been filed, as a result of extensive attempts by Prudential to settle its claims, defendant well knew plaintiff's factual contentions.

■ Under such circumstances, it is inappropriate to hold that *any* claim arising out of these transactions between these parties, after November 1962 concerning the Puerto Rican petrochemical core facility

is barred by statutes of limitations. To hold otherwise would invite the prolix pleading of separately stated causes of action, founded on separate theories of substantive law, but arising out of the same course of dealing, just the type of pleading with which the New York state courts are plagued, and which Rule 8, F.R.Civ.P. was intended to avoid. The history of the Federal Rules is too well known to require documentation of this statement. A complaint is good in this Court unless it appears beyond doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief. *United States v. VanRaalte Co.,* 328 F.Supp. 827, 829 (S.D. N.Y.1971).

### III

Additional bases in support of the motion are set forth in the memorandum of law filed in support thereof but not contained in the motion papers. These have all been considered by the Court. For the most part they have been resolved adversely to the defendant by the verdict of our jury, which the Court believes, resolving all issues of credibility, and drawing all permissible inferences from the evidence most favorably to plaintiff was not so unreasonable as to be disturbed by the Court.

Defendant's motion for judgment notwithstanding the verdict is denied.

So Ordered.

ing Phillips' plagiarized brochure above mentioned. This latter means of access is not consonant with a contract implied in fact, but rather suggests a tortious misappropriation. Prudential's name was all over the papers, and it was clear to anyone possessing Exhibit P–215 that Chapman had engaged in an attorney-client relationship with Prudential at some time prior to delivery by him of the brochure to Phillips.

Learned, Chief Executive Officer of Phillips, testified that defendant's entry into the Puerto Rican petrochemical core facility project was

not as a result of his November 1972 letter to Prudential, followed by Prudential's dealings with Fischbeck, but rather occurred when Chapman, whom he did not know, telephoned him "out of the blue" in August 1963, and suggested that Phillips initiate a petrochemical core facility in Puerto Rico. This telephone call (Tr. p. 1554) was followed by a visit to Chapman's law office.

All of the foregoing evidence and the question of what inferences may be drawn from it are merged in our jury's verdict. We mention it only to explain the apparent inconsistency.