[No. 14605. Department One. December 18, 1918.]

JOHN DAVIS & COMPANY, *Appellant,* v. VINCENT D. MILLER, VINCENT D. MILLER, INCORPORATED, *Respondents.*[1]

INJUNCTION (16) — TRADE SECRETS — SOLICITING CUSTOMERS BY FORMER EMPLOYEE. Equity will grant an injunction against the solicitation by a, former manager, of the customers of a loan, real estate, and insurance agency, where he used his personal acquaintance with the customers and his knowledge of the agency's business and confidential matters as a reason for transferring their patronage to a competitor.

SAME (52)—ACTIONS—EVIDENCE—ADMISSIBILITY. In an action to enjoin the solicitation by a former manager of the customers of a loan, real estate, and insurance agency, it is error to exclude evidence of daily confidential meetings showing defendant's relation to plaintiff's business and the knowledge that he had acquired of it and of the customers while employed by it.

Appeal from a judgment of the superior court for King county, French, J., entered September 12, 1917, upon granting a nonsuit, dismissing an action for an injunction. Reversed.

*Carkeek & McDonald,* for appellant.

*Kerr & McCord,* for respondents, cited: *Flessher v. Carstens. Packing Co.,* 81 Wash. 241, 142 Pac. 694; *New Method Laundry Co. v. MacCann,* 174 Cal. 26, 161 Pac. 990, Ann. Cas. 1918C 1022; *Du Pont De Nemours Powder Co. v. Masland,* 216 Fed. 271; *New York Towel Supply Co. v. Lally,* 162 N. Y. Supp. 247; *Peerless Pattern Co. v. Pictorial Review Co.,* 132 N. Y. Supp. 37; *Bossing v. Dorman,* 210 N. Y. 529, 103 N. E. 1121; *Stein v. National Life Association,* 105 Ga. 821, 32 S. E. 615.

MAIN, C. J.—This action was brought for the purpose of securing an injunction against the defendants,

[1]Reported in 177 Pac. 323.

restraining them from soliciting the customers of the plaintiff. At the conclusion of the plaintiff's evidence, the trial court granted a nonsuit and entered a judgment dismissing the action. From this judgment, the appeal is prosecuted.

The case has heretofore been before this court (*State ex rel. Davis & Co. v. Superior Court*, 95 Wash. 258, 163 Pac. 765), and it is only necessary here to state the facts briefly.

John Davis & Company, a corporation, the appellant, for many years prior to the institution of this action, was engaged in the real estate business in Seattle. This business consisted of four departments: rental, real estate, mortgage loan, and insurance. In the testimony the rental department is described as the "Hub" of the business. The respondent Vincent D. Miller had been in the employ of John Davis & Company since 1900, and from 1908 until November 1916 (when he left that company), he had been manager of the rental department. In the absence of the two leading officers of the corporation, Miller acted as manager thereof. As manager of the rental department, Miller came in personal contact with many, if not all, of the principal customers of the business. Immediately after leaving John Davis & Company, Miller organized the Vincent D. Miller, Incorporated, a corporation, and engaged in a competitive business with his former employer. When leaving the employment of John Davis & Company he induced two other employees, one of whom at least had a considerable acquaintance with the customers of John Davis & Company, to become employees of the Vincent D. Miller company. After the latter company had begun business, Miller and the two other employees referred to, under his direction, began a systematic solicitation of the customers of John Davis & Company to leave

that company and transfer their business to the Vincent D. Miller company. In the few weeks that elapsed before the institution of the present action, a large number of the customers of John Davis & Company were induced to transfer their business. Miller had a personal acquaintance with these customers which he acquired while employed by John Davis & Company, and in soliciting them to leave that company he referred to the fact of his personal acquaintance with them and the knowledge that he had of their properties which was acquired during his employment. Miller, when testifying, stated that he would continue to solicit the customers of John Davis & Company unless restrained. The solicitation was both oral and by means of letters or telegrams.

It was the practice of John Davis & Company, which was a large concern, to have a meeting of all of its employees every morning for a few minutes, at which meeting Miller presided. After this meeting, there was a second meeting, attended only by John Davis, Miller and one other employee. At the second meeting any prospective business that was not thought best to be discussed around the office generally was considered. An attempt to inquire fully into what further took place at this second meeting was met with an objection which was sustained by the trial court.

The action as originally brought sought both an injunction and damages, but upon the oral argument to this court the question of damages was waived; it therefore becomes a question whether the appellant is entitled to injunctive relief.

Before proceeding further, it should be stated that the question here is not whether Miller, being a former employee of the appellant, has a right to engage in a competitive business with that company in the same community; neither is it a question whether he has a

right to transact any business for the former customers of John Davis & Company which may come to him or his company voluntarily. The question is, however, whether Miller has a right to solicit the customers of John Davis & Company to leave that company and transfer their business to him, using as a reason therefor his personal acquaintance with them which he acquired while employed by John Davis & Company · and the fact that he there looked after or managed their business.

There is no question but that equity will always protect against the unwarranted disclosure of trade secrets, confidential communications, and the like, and we do not understand this proposition to be controverted. There are a number of cases holding that the information which an employee upon a laundry, milk, or tea route acquires of the names and addresses of his employer's customers is confidential. In *Stevens & Co. v. Stiles*, 29 R. I. 399, 71 Atl. 802, 20 L. R. A. (N. S.) 933, the defendant had been employed by an optician to examine the eyes of patients and prescribe lenses. Before leaving this employment he copied from the books or records of his employer the names and addresses of those customers for whom he had prescribed while in that employment. After severing his connection with his employer, he sent circular letters to the persons whose names and addresses he had thus acquired, soliciting their patronage and business for a competitor of his former employer. It was there said:

"It is admitted that the respondent was in the employ of the complainant in its store, examining the eyes of patrons, prescribing glasses, and making records of the cases examined and treated, as also of prescriptions which came to the store from physicians outside. We do not see how such relations can be considered as other than confidential. As to the absence

of an agreement not to enter into competition with
the complainant, it is sufficient to say that the decree
does not enjoin such action on the part of the respond-
ent. Particular stress is laid upon the claim that the
only names copied from complainant's lists were those
of customers whom the respondent personally ex-
amined, and it is argued that to copy and use such a
list of names is not a breach of trust or a breach of
confidence. The argument does not commend itself to
us. It is elementary that what is done by the agent
in the course of his employment is in the legal sense
done by the master himself. The respondent could
have no more right to copy records made by himself
while acting for the complainant than he would have
to copy any other records of the complainant to which
he had access.''

In *Robb v. Green*, 2 Q. B. Div. (1895) 315, the plain-
tiff was a dealer in live game and eggs. For the pur-
pose of carrying on this business he occupied what
was called game farms. The defendant for a time was
manager of the business, and while in that employment
copied a list of the names and addresses of the cus-
tomers. Subsequently the defendant became associ-
ated with a rival business and sought to solicit the
customers of his former employer. It was there held
that it was an implied term of the contract of service
that the defendant would observe good faith towards
his master during the existence of the confidential re-
lation between them, and that the defendant's conduct
was a breach of that contract.

Running through the cases will be repeatedly found
the statement that, where an employee, after severing
his connection with his former employer, makes use
of trade secrets or confidential information which he
acquired during his employment, in a competitive bus-
iness, it results in what is called unfair competition
and will be restrained.

In each of the two cases above cited, it will be noted that a copy was made and taken away when the employment ceased. In this case Miller did not take away a copy of the list of the customers of John Davis & Company and their addresses, but he testifies that the names of the customers were in his "head" and he knew where to get the addresses. Whether the information was carried away, first having been reduced to writing, or carried away in the memory can make no difference. In *People's Coat, Apron & Towel Supply Co. v. Light,* 171 App. Div. 671, 157 N. Y. Supp. 15, speaking upon this question, it was said:

"There is no evidence that Light had a written list of them (customers). There was in his head what was equivalent. They were on routes, in streets, and at numbers revealed to him through his service with plaintiff. Their faces were familiar to him, and their identity known because of such employment. He had entry and introduction, and solicited them, not as strangers, but as persons known to him. He used what he had gained through plaintiff to take away its customers."

In the present case, Miller used what he had gained while in the employment of appellant to take away its customers, and asserted that he would continue to do so in the future unless restrained. The business of his former employer had been built up through many years by the practice of industry, expenditure of money, and the exercise of judgment. It certainly would be unfair competition for Miller, after leaving the employment, to use his acquaintance with the customers of that company there acquired and the knowledge of the business which he there transacted as a reason why such customers should transfer their business to him or his company. In our opinion, the trial court erred in granting the nonsuit.

Certain New York cases have been referred to. It must be admitted that the cases referred to in the New York Supplement are not entirely harmonious. In *Boosing v. Dorman*, 210 N. Y. 529, 103 N. E. 1121, a judgment of the supreme court of that state in favor of the defendants was affirmed without discussing the question. In that case, however, it was held, as pointed out in the appellate division of the supreme court (148 App. Div. 824, 133 N. Y. Supp. 910), that the defendant would not be "perpetually" restrained from soliciting customers of his former employer. The question of the duration for which an injunction might properly issue cannot well be considered in this case at the present time, since the case was disposed of by the trial court in granting a nonsuit, and it must be returned for a new trial.

There are other points, two of which will be briefly referred to. One is urged by the appellant and the other by respondent. The appellant claims that it was error to refuse to permit it to inquire into what took place at the second meeting, above referred to in the office of John Davis & Company when there would be present only Davis, Miller and another employee. This testimony should have been admitted. The nature of Miller's relation to the business of his employer and the knowledge which he acquired of that business and of its customers while there employed was a proper subject of inquiry. It may be that there is not sufficient merit in this point to justify a reversal if the case had been fully tried, but since the case must be retried, it seemed best to suggest the proper ruling. The respondents contend that the entire action was predicated upon the charge of conspiracy, and since that failed, the court was justified in granting the nonsuit. The complaint did charge conspiracy, but it also, aside

from that, stated a cause of action for unfair competition. The case of *Flessher v. Carstens Packing Co.,* 81 Wash. 241, 142 Pac. 694, is not in point. In that case the action was founded upon negligence in selling poisoned or diseased meat. In submitting the case to the jury, the trial court disregarded the allegations of the complaint and instructed that the liability of the defendant was to be determined under the provisions of the pure food act. It was there held that the character of the action was determined by the allegations of the complaint, which contained no mention of any violation of the statute.

Some of the other points discussed in the briefs would be material if either the question of damages or of conspiracy were still in the case. Since these questions are not now pressed, it seems unnecessary to review points which would relate to them alone.

The judgment will be reversed, and the cause remanded with directions to the superior court to grant a new trial.

FULLERTON and CHADWICK, JJ., concur.