971 P.2d 936 (1999)
137 Wash.2d 427
ED NOWOGROSKI INSURANCE, INC., a Washington corporation, Respondent,
v.
Michael RUCKER and Monica Rucker, and their marital community, Defendants,
Darwin Rieck and Mary Rieck, and their marital community; Jerry Kiser and Jana Kiser, and their marital community; and Potter Leonard and Cahan, Inc., a Washington corporation, Petitioners.
No. 66224-0
Supreme Court of Washington, En Banc.
Argued October 20, 1998.
Decided February 25, 1999.
Reconsideration Denied April 20, 1999.
*937 Oseran, Hahn, Van Valin & Watts, Charles E. Watts, Bellevue, for petitioners.
Winterbauer & Associates, Steven Mill Winterbauer, Seattle, for respondent.
GUY, C.J.

FACTS
This case is a trade secrets misappropriation action brought under the Uniform Trade Secrets Act, RCW 19.108, by an employer against former employees. The employer, Ed Nowogroski Insurance, Inc. (Nowogroski Inc.), owned by the Rupp family, sued its former employees, Michael Rucker, Darwin Rieck and Jerry Kiser, for soliciting its clients using confidential information. The employees had worked for Nowogroski Inc. as insurance salesmen and servicers of insurance business. Nowogroski Inc. also sued Potter, Leonard and Cahan, Inc., a rival insurance agency, for which employees Rucker, *938 Rieck and Kiser commenced work when they terminated their employment with Nowogroski Inc.
Following a bench trial, the trial court found that the employees had misappropriated Nowogroski Inc.'s trade secrets by retaining and using confidential client lists and other information. However, it awarded no damages for one employee's solicitation of clients through the use of memorized client information. None of the factual findings has been challenged in this Court.
The history of the relationship among the parties is necessary to understand the nature of the lawsuit. In the early 1970s, Joan and Don Rupp came to Seattle and purchased Nowogroski Inc. for $527,000. In 1982, the Rupps purchased the Stan Olsen Agency for $275,000, which price represented more than two times the commissions on its insurance business. In 1984, they purchased the James Cain Agency for $135,000, which constituted 2.14 times its annual commissions. All of the businesses were purchased and financed over a long period of time. In subsequent years, other "small books of business" were purchased by Nowogroski Inc. for two times the commissions.
In 1982, Nowogroski Inc. hired Mr. Rieck to service the Olsen accounts. Mr. Rieck had no accounts of his own when he started working at Nowogroski Inc. At the time of the purchase of the Cain Agency, the Rupps and Mr. Rieck guaranteed payment and Mr. Rieck was awarded 5.14 percent of the shares of Nowogroski Inc. for his guarantee on this debt. In 1986, Don Rupp hired Jerry Kiser. Both Mr. Rieck and Mr. Kiser expected to be able to purchase the business from the Rupps eventually. However, in 1988, Don Rupp died suddenly before any buy-in plans were formulated. The following year Nowogroski Inc. hired Mike Rucker.
Several years later, after Joan Rupp's daughter had joined the management team, friction developed between the Rupps and the three employees. In the Spring of 1992, Joan Rupp told Rieck, Kiser and Rucker to buy their business and leave the company. The three employees made an unsecured offer of 0.4 times the commissions on the business they worked on. Mrs. Rupp considered this monetarily inadequate and rejected the offer. Although Mrs. Rupp hired a counselor to attempt to restore peace, the effort was unsuccessful. On August 18, 1993, the three employees informed Mrs. Rupp and her daughter of their intent to leave on August 31, 1993. Another offer of purchase was submitted on August 24, which Mrs. Rupp rejected. The court found that none of the writings that evidenced the men's employment contracts obligated Mrs. Rupp to sell the business to them under the terms they suggested.
The trial court found that Mr. Kiser had agreed not to compete with Nowogroski Inc. if he left the agency. Mr. Kiser, at the request of Don Rupp, had written Mr. Rupp a letter at the commencement of his employment, which stated:
Accepting this [employment] opportunity means that my employer will be the agency known as Nowogroski Insurance Associates. That being, my allegiance will solely be to this employment. If that relationship should change, certain obligations to Nowogroski Insurance Associates should be recognized for their contributions to my employment. Basically, those obligations should be those of non-compete on that business of Nowogroski Insurance Associates that I was associated with while in that employment. This non-compete should be a negotiable situation based on a certain time limit, and should have other terms where certain business may be negotiated with other options agreed upon by interested parties.
Ex. 20. The trial court found this agreement to be an enforceable obligation not to compete.
When Michael Rucker joined the insurance agency in 1989, he signed a Memorandum of Understanding. Under that memorandum, in the event Mr. Rucker terminated his employment with Nowogroski Inc., Mr. Rucker agreed to purchase the accounts he had produced at an agreed multiple of 1.5 times the annual commissions. He also agreed not to solicit any of Nowogroski Inc.'s business that he did not produce for two years in King County and "understood and agreed that customer *939 lists and information pertinent to each file are considered to be trade secrets protected by law." Ex. 34. Mr. Rieck signed on behalf of Nowogroski Inc., Mr. Rucker signed on his own behalf and Joan Rupp witnessed the contract. The trial court concluded that Mr. Rucker had breached this contract with Nowogroski Inc. and that he had also misappropriated the employer's trade secrets. The trial court awarded damages against Mr. Rucker at the multiple of 1.5 times commissions of $58,775.80, for a total of $88,163.70. Because of the contract damages, the trial court found it unnecessary to calculate damages based on Mr. Rucker's violation of the Uniform Trade Secrets Act. Mr. Rucker did not appeal the trial court's decision, was not a party at the Court of Appeals, and is not a party in this Court.
With regard to the trade secrets cause of action, the trial court stated in its findings:
I find that insurance summaries, customer lists and other documents containing customer names, expiration dates, coverage information and related information produced by the agency or by the insurance company and kept by the agency, as opposed to information retained in their heads, are trade secrets. I find that the above information derives independent economic value from not being known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.
Clerk's Papers at 262F.
The trial court also found that the insurance company had maintained the secrecy of its customer files by educating its staff and by providing employment manuals and employment agreements and that Nowogroski Inc.'s efforts in this regard had been reasonable. The trial court found:
1.15 Rieck, Kiser and Rucker all had an obligation under the personnel manual and common law to maintain secrecy of the above-described information. Their taking this information and taking or refusing to return summaries of insurance, customer lists and other documents containing customer information produced or commonly retained by plaintiff constitutes misappropriation.
1.16 Rieck, Kiser and Rucker all three misappropriated their employer's trade secrets, either by taking company records, summaries and other information, or by retaining them after plaintiff demanded their return.
1.17 Rucker, Rieck and Kiser all solicited the customers of plaintiff and many of those customers transferred their business to the defendants. The solicitation was knowingly and wilfully aided and abetted by Potter, Leonard and Cahan, Inc.[[1]]
Clerk's Papers at 262G.
The trial court concluded that the noncompetition agreement between Mr. Kiser and Nowogroski Inc. was binding, and that Mr. Kiser was obligated to pay for the business he solicited from the plaintiff based upon "this contract and upon his violation of the Trade Secrets Act." Clerk's Papers at 262H. The court then considered conflicting evidence on the value of the insurance business which had been misappropriated and determined the value to plaintiff of what was lost by calculating a multiple of 0.5 of the commissions. The court awarded plaintiff $73,306 from Mr. Kiser.
However, the court found that Mr. Rieck had *940 testified he knew his top fifty clients well enough that he needed no summaries or other aids to work from to solicit business. He had that information in his head. He does indicate that to some extent he used summaries to construct his customer list, but other than this admission, plaintiff hasn't shown the extent of such use. Therefore, I do not award damages for solicitation of the fifty largest customers. I approach the value of Rieck's commissions in the same way as Kiser. The commissions regarding the customers other than the fifty largest were a total of $11,939.00, and one-half of that is $5,969.50....
Clerk's Papers at 262I.
The trial court declined to award any damages based on unjust enrichment, emotional damages, exemplary damages or attorney fees. The court found that the employees' new employer, Potter, Inc., had knowingly and willfully assisted the employees in their solicitation of business and awarded damages against Potter, Inc.
In its conclusions of law, the court found that Rieck, Rucker and Kiser, assisted by Potter, Inc., had violated the Uniform Trade Secrets Act, RCW 19.108, because of their wrongful use and retention of Nowogroski Inc.'s confidential information and trade secrets, and that Nowogroski Inc. was entitled to damages. The court concluded the Act displaced various other common law actions. The court further concluded that the Uniform Trade Secrets Act displaced common law cases such as John Davis & Co. v. Miller, 104 Wash. 444, 177 P. 323 (1918), and therefore an employee does not violate the Act by using information from his head to solicit business from his former employer.
Nowogroski Inc. appealed, arguing that the trial court erred in holding that prior Washington cases prohibiting an ex-employee from using memorized, confidential client information to solicit his former employer's customers were abrogated by the Uniform Trade Secrets Act. Nowogroski Inc. argued that the form of information which constituted a trade secret is irrelevant. Nowogroski Inc. also argued that the employees should be liable for misappropriation of a trade secret whether the information that constituted the protected information was written or memorized.
Mr. Rucker did not appeal the trial court's decision that he was contractually bound to purchase his customer accounts at 1.5 times annual commissions. Mr. Rieck did not challenge the trial court's finding that the customer list was a trade secret which Mr. Rieck had misappropriated. He argued that the trial court was correct in limiting damages for only those accounts that were on a written list and not for the 50 largest accounts which were in his memory. Mr. Rieck asked the Court of Appeals to affirm the judgment against him as to liability and amount. Mr. Kiser cross-appealed, arguing that he had no legally enforceable covenant not to compete with his former employer and that only damages awardable under the Uniform Trade Secrets Act should be computed. Potter, Inc. also cross-appealed, agreeing with Mr. Kiser.
The Court of Appeals held that there was no legal distinction between written and memorized information under the Washington Uniform Trade Secrets Act. The Court explained:
We hold that the common law rule prohibiting the solicitation of a former employer's customers with memorized confidential information remains intact under the UTSA. The UTSA defines trade secrets as "information[.]" RCW 19.108.010(4). Its examples of "method[s]" and "technique[s]" indicate that the Legislature did not intend to limit trade secrets to written or tangibly fixed data. Rather, the test is whether the information derives value from being subject to reasonable secrecy efforts and not generally known or readily ascertainable. RCW 19.108.010(4)(a), (b).
The UTSA focuses on the nature of the information, not the form in which it exists. Thus, the distinction between written and memorized information is without legal significance. Rieck and [Potter] do not dispute that Nowogroski's customer lists and written information constitute trade secrets. Because the lower court excluded damages for Rieck's solicitation of his fifty *941 largest accounts only because he memorized the client information, we reverse and remand for entry of an increased damage award.
Ed Nowogroski Ins., Inc. v. Rucker, 88 Wash.App. 350, 357-58, 944 P.2d 1093 (1997), review granted, 134 Wash.2d 1024, 958 P.2d 313 (1998).
The Court of Appeals found that Mr. Kiser's letter (quoted above) showed an intent to enter a noncompete agreement but that its essential terms were never decided. However, the Court held that the decision was of no practical significance since the trial court had also found that Mr. Kiser was liable for Nowogroski Inc.'s losses based on his violation of the Uniform Trade Secrets Act.
The Court of Appeals affirmed the trial court's dismissal of Nowogroski Inc.'s other tort claims based on the exclusive remedy provision of the Uniform Trade Secrets Act. The Court of Appeals affirmed the trial court's award of damages based on 0.5 percent of commissions and affirmed its refusal to award separate damages for unjust enrichment, exemplary damages and attorney fees.
We granted the employees and their new employer's petition for review. The parties do not challenge the trial court's findings of fact that the customer list was a trade secret because it derived independent economic value from not being known and had been subject to reasonable efforts to keep it secret. Nowogroski Inc. does not argue to this Court that other tort causes of action should have been allowed to go to trial and does not argue that the trial court's computation of damages is erroneous. The Petitioners challenge only the Court of Appeals' conclusion that both memorized confidential information, as well as written information, may be protected under the Uniform Trade Secrets Act if it otherwise qualifies as a trade secret under the Act. Therefore, only one issue is before us.

ISSUE
Does information which has been determined to be a trade secret, under the definition in the Uniform Trade Secrets Act, lose its protected status because it has been committed to memory rather than taken in written form?

ANALYSIS

Standard of Review
While the definition of a trade secret is a matter of law under the Uniform Trade Secrets Act, RCW 19.108.010(4), the determination in a given case whether specific information is a trade secret is a factual question. See Chevron U.S.A. Inc. v. Roxen Serv., Inc., 813 F.2d 26, 29 (2d Cir.1987); Stephen L. Sheinfeld, Employees' Duties and Liabilities: Protecting Employer Confidences, in LITIGATION (PLI Handbook Series No. H0-0012, Mar. 1998), available in Westlaw 581/Lit 347; Alois Valerian Gross, Annotation, What is "Trade Secret" so as to Render Actionable Under State Law its Use or Disclosure by Former Employee, 59 A.L.R.4th 641 (1988). Whether memorized information can be protected by the Uniform Trade Secrets Act is a question of law dependent on interpretation of the statute and thus is subject to de novo review. The factual findings which support the trial court's conclusion that the customer list in this case is a trade secret are not challenged.

Discussion
As a general rule, an employee who has not signed an agreement not to compete is free, upon leaving employment, to engage in competitive employment.[2] In so doing, the former employee may freely use general knowledge, skills, and experience acquired under his or her former employer. However, the former employee, even in the absence of an enforceable covenant not to compete, remains under a duty not to use or disclose, to the detriment of the former employer, trade secrets acquired in the course of previous *942 employment. Where the former employee seeks to use the trade secrets of the former employer in order to obtain a competitive advantage, then competitive activity can be enjoined or result in an award of damages. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 42 cmts. b, c (1995); Arnold H. Pedowitz, A Practical, and Ethical, Discussion on Advising Clients Confronting Non-Competition, Non-Solicitation and Loyalty Issues, in LITIGATION *308 (PLI Handbook Series No. H0-0012, Mar. 1998), available in Westlaw 581/Lit 289; Microbiological Research Corp. v. Muna, 625 P.2d 690, 697 (Utah 1981) (citing 2 RUDOLF CALLMANN, THE LAW OF UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 54.2(a), at 416 (3d ed.1967)); K.H. Larsen, Annotation, Former Employee's Duty, in Absence of Express Contract, Not to Solicit Former Employer's Customers or Otherwise Use His Knowledge of Customer Lists Acquired in Earlier Employment, 28 A.L.R.3d 7, 18 (1969).
Once a common law concept, trade secret protection is now governed by statutes in most states, including Washington. Machen, Inc. v. Aircraft Design, Inc. 65 Wash.App. 319, 324, 828 P.2d 73 (1992). Forty-one states and the District of Columbia have adopted the Uniform Trade Secrets Act. Unif. Trade Secrets Act (amended 1985), 14 U.L.A. 152 (Supp.1998). The Uniform Trade Secrets Act, RCW 19.108, was adopted in Washington in 1981 and provides that a plaintiff can receive damages for misappropriation of trade secrets. Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 46, 738 P.2d 665 (1987); Machen, 65 Wash.App. at 324, 828 P.2d 73. The Act codifies the basic principles of common law trade secret protection. MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir.1993). A purpose of trade secrets law is to maintain and promote standards of commercial ethics and fair dealing in protecting those secrets. Boeing, 108 Wash.2d at 58, 738 P.2d 665 (citing Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 481-82, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974)).
The Uniform Trade Secrets Act defines trade secret as follows:
"Trade secret" means information, including a ... compilation ... that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
RCW 19.108.010(4).
In determining whether information has "independent economic value" under the Uniform Trade Secrets Act, one of the key factors used by the courts is the effort and expense that was expended on developing the information. Gale R. Peterson, Recent Developments in Trade Secret Law in an Information Age, in PATENTS, COPYRIGHTS, TRADEMARKS & LITERARY PROPERTY *438 (PLI Handbook Series No. G4-4042, Feb. 1998), available in Westlaw 507/Pat 351. A plaintiff seeking damages for misappropriation of a trade secret under the Uniform Trade Secrets Act has the burden of proving that legally protectable secrets exist. Boeing, 108 Wash.2d at 49, 738 P.2d 665.
In this case, the trial court found that the insurance information, including the customer lists: (1) derived independent economic value from not being known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (2) that the plaintiff's efforts to keep the customer files secret by educating its staff and by providing employment manuals and employment agreements had been reasonable.
The portion of the Act's definition of "misappropriation" which applies here proscribes the disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know his or her knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. RCW 19.108.010(2).[3]
*943 The nature of the employment relationship imposes a duty on employees and former employees not to use or disclose the employer's trade secrets. E.g., By-Buk Co. v. Printed Cellophane Tape Co., 163 Cal. App.2d 157, 329 P.2d 147, 151 (1958); Allen Mfg. Co. v. Loika, 145 Conn. 509, 144 A.2d 306, 309 (Conn.1958); see Sheinfeld, supra. The Petitioners in the present case do not argue that the trial court erred in concluding that they "misappropriated" a trade secret; rather, they argue that information in the memory of the employee about a customer list is not a trade secret.[4]
A customer list is one of the types of information which can be a protected trade secret if it meets the criteria of the Trade Secrets Act. American Credit Indem. Co. v. Sacks, 213 Cal.App.3d 622, 262 Cal.Rptr. 92 (1989) (finding an insurance company's customer list of policyholders was a trade secret protected by the Uniform Trade Secrets Act and finding solicitation by former employee constituted a misappropriation within the meaning of the Act); MAI Sys. Corp., 991 F.2d at 521 (a manufacturer's customer list had potential economic value and was protectable under the California Uniform Trade Secrets Act because it allowed competitors like the defendant to direct their sales efforts at specific potential customers); Fred's Stores, Inc. v. M & H Drugs, Inc., 725 So.2d 902 (Miss.1998) (factual inquiry under the Uniform Trade Secrets Act whether customer lists qualified as trade secrets); Morlife, Inc. v. Perry, 56 Cal.App.4th 1514, 66 Cal. Rptr.2d 731 (1997); Microbiological Research Corp. v. Muna, 625 P.2d 690, 700 (Utah 1981) (some customer lists which are the result of effort and expense on the employer's part may be trade secrets which are *944 deserving of protection while others which are readily ascertainable outside of the business are not trade secrets); see also Peterson, supra, at *437 (if a customer list contains information not generally known in the trade and if the proprietor has taken reasonable steps to preserve the secrecy of that information, then such lists are protectable); Unif. Trade Secrets Act, 14 U.L.A. 447-48 (1990), 167-69 (Supp.1998) (citing cases when customer lists are treated as protected trade secrets); Annotation, supra, 28 A.L.R.3d 7 (1969 & Supp.1998); Pedowitz, supra, at *308 (citing cases where, depending on the facts, customer lists may or may not be trade secrets).
Trade secret protection will not generally attach to customer lists where the information is readily ascertainable. Boeing, 108 Wash.2d at 49-50, 738 P.2d 665; National Sch. Studios, Inc. v. Superior Sch. Photo Serv., Inc., 40 Wash.2d 263, 242 P.2d 756 (1952); Jewett-Gorrie Ins. Agency, Inc. v. Visser, 12 Wash.App. 707, 531 P.2d 817 (1975). If information is readily ascertainable from public sources such as trade directories or phone books, then customer lists will not be considered a trade secret and a prior employee, not subject to a noncompetition agreement, would be free to solicit business after leaving employment. See Peterson, supra, at *436-37. The Petitioners' reliance on National Sch., Jewett-Gorrie, and Vigoro Indus. Inc. v. Crisp., 82 F.3d 785 (8th Cir.1996), is misplaced. In those cases, the courts found that the customer information was not entitled to trade secret protection because it was readily ascertainable. Jewett-Gorrie, 12 Wash.App. at 716, 531 P.2d 817; National Sch., 40 Wash.2d at 272, 273, 242 P.2d 756; Vigoro, 82 F.3d at 789-90.
Briefly expressed, whether a customer list is protected as a trade secret depends on three factual inquiries: (1) whether the list is a compilation of information; (2) whether it is valuable because unknown to others; and (3) whether the owner has made reasonable attempts to keep the information secret. There is no dispute in this case that the customer names, expiration dates, coverage information and related information is a compilation of information. The trial court found that the customer list and associated information derived independent economic value from not being known, or readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use and that Nowogroski Inc. undertook reasonable steps to protect its secrecy.
The question before us is whether the fact that the customer information was in one of the employee's memory allows him to use with impunity the information which was otherwise a trade secret under our statute. We recognize a split of authority on this issue. At common law, many courts relied on the RESTATEMENT (FIRST) OF TORTS, published in 1939, to determine whether information was a trade secret. See Aronson v. Quick Point Pencil Co., 440 U.S. 257, 266, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979). After the adoption of the Uniform Trade Secrets Act by the National Conference of Commissioners on Uniform State Laws in 1979, the American Law Institute omitted the topic of trade secrets from the RESTATEMENT (SECOND) OF TORTS and instead included it in the RESTATEMENT of Unfair Competition. In 1995, the RESTATEMENT (THIRD) OF UNFAIR COMPETITION was released to reflect the changes in the law since the adoption of the Uniform Trade Secrets Act by a majority of states.
The RESTATEMENT (THIRD) OF UNFAIR COMPETITION takes the position that "[t]he general rules that govern trade secrets are applicable to the protection of information relating to the identity and requirements of customers." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 42 cmt. f (1995). The RESTATEMENT explains that "[c]ustomer identities and related customer information can be a company's most valuable asset and may represent a considerable investment of resources." RESTATEMENT, supra. However, the RESTATEMENT (SECOND) OF AGENCY § 396 (1958) also deals with an ex-employee's use of confidential information and provides:
Unless otherwise agreed, after the termination of the agency, the agent:
(a) has no duty not to compete with the principal;

*945 (b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent;
(c) has a duty to account for profits made by the sale or use of trade secrets and other confidential information, whether or not in competition with the principal;
(d) has a duty to the principal not to take advantage of a still subsisting confidential relation created during the prior agency relation.
Comment b explains that although an agent cannot use copies of written memoranda concerning customers, an agent is normally privileged to use, in competition with the principal, customer names retained in his or her memory. A recent Practicing Law Institute article explains that this "memory rule" was an example of the courts' attempts at striking a balance between trade secret law and the principles of vigorous business competition. However, the PLI article criticizes this rule, stating:
In actuality, though, the "memory rule" makes little practical sense, and even less legal sense. If the subject matter truly is a trade secret, deciding whether there has been misappropriation should not be based on anatomical distinctions. It should make no difference whether the ex-employee uses his or her head or hands to effect the appropriation. The Restatement (Third) of Unfair Competition attempts to reconcile the "memory rule" with traditional trade secret analysis: "[t]he fact that an employee has appropriated a written list or made a special attempt to memorize customer information prior to terminating the employment may justify an inference that the information is valuable and not readily accessible by proper means."
Hopefully, the Restatement (Third) of Agency will correct its view. In the meantime, some courts will apparently ignore it.
Peterson, supra, at *444 (footnotes omitted). While the Restatement (Second) of Agency was written in 1958, the RESTATEMENT (THIRD) OF UNFAIR COMPETITION was written in 1995, subsequent to the adoption of the Uniform Trade Secrets Act. We decline to adopt the RESTATEMENT OF AGENCY's "memory rule," as it does not comport with prior Washington law or meet the goal of promoting standards of commercial ethics and fair dealing by protecting trade secrets.
While there is no reported case law on this issue in Washington subsequent to the adoption of the Uniform Trade Secrets Act, common law in Washington prior to the adoption of the Act holds that a former employee could not use confidential information of his or her former employer's customers to actively solicit their business. The fact that the former employee memorized the information, rather than taking it in a written form, made no difference. Davis & Co., 104 Wash. at 449, 177 P. 323; J.L. Cooper & Co. v. Anchor Sec. Co., 9 Wash.2d 45, 64, 113 P.2d 845 (1941). As noted above, the Uniform Trade Secrets Act codifies the basic principles of common law trade secret protection. MAI Sys. Corp., 991 F.2d at 520; see also 2 RUDOLF CALLMANN, THE LAW OF UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES §14.31, at 219 (4th ed. Supp.1996) (the same principles apply to the protection of customer lists under the Uniform Trade Secrets Act as under the common law). In the absence of legislative intent to the contrary, prior common law which is not contradicted by the Uniform Trade Secrets Act should continue to guide courts in the interpretation of the Act. See Avnet, Inc. v. Wyle Lab., Inc. 263 Ga. 615, 437 S.E.2d 302, 305 (1993) (the state Uniform Trade Secrets Act is to be construed in harmony with the preexisting common law on trade secrets). The Uniform Trade Secrets Act only abrogates prior conflicting state law. RCW 19.108.900[5]; Boeing, 108 Wash.2d at 48, 738 P.2d 665.
*946 The Uniform Trade Secrets Act does not distinguish between written and memorized information. The Act does not require a plaintiff to prove actual theft or conversion of physical documents embodying the trade secret information to prove misappropriation. RCW 19.108.010(2), (4). See Stampede Tool Warehouse, Inc. v. May, 272 Ill.App.3d 580, 209 Ill.Dec. 281, 651 N.E.2d 209, 217 (1995) (construing an identical version of the Uniform Trade Secrets Act and concluding physical appropriation is not required for misappropriation of a secret customer list). The Washington Uniform Trade Secrets Act defines a "trade secret" to include compilations of information which have certain characteristics without regard to the form that such information might take. The definition of "misappropriation" includes unauthorized "disclosure or use." RCW 19.108.010(2)(b). As the Court of Appeals noted, two types of information mentioned in the Uniform Trade Secrets Act as examples of trade secrets include "method" and "technique;" these do not imply the requirement of written documents. RCW 19.108.010(4).
The Uniform Trade Secrets Act provides that it should be construed to effectuate its purpose to make uniform the law with respect to the subject of the chapter among states enacting it. RCW 19.108.910. While there is some split of authority on the issue in other jurisdictions, many state courts, before and after the adoption of the Act, have held that it is the character of the information which determines whether it is a trade secret and not the manner of its appropriation.
While some courts have only protected tangible lists of customers or other written trade secrets, e.g., DeGiorgio v. Megabyte Int'l, Inc., 266 Ga. 539, 468 S.E.2d 367 (1996);[6]Pearce v. Austin, 465 So.2d 868 (La.Ct.App.1985), other courts, before and after the adoption of the Uniform Trade Secrets Act, have protected trade secret information, whether memorized or taken in written form. In Stampede Tool Warehouse, Inc. v. May, 272 Ill.App.3d 580, 209 Ill.Dec. 281, 651 N.E.2d 209 (1995), former employees left Stampede to form their own business and recreated a copy of Stampede's customer list from memory. The court found a misappropriation of the customer list and a violation of the Uniform Trade Secrets Act. The court explained that using memorization to rebuild a trade secret does not transform that trade secret from confidential information into nonconfidential information and that the memorization is one method of misappropriation.
In Morlife, Inc. v. Perry, 56 Cal.App.4th 1514, 66 Cal.Rptr.2d 731 (1997), an action by a roof repair company against former employees for misappropriation of confidential customer information in violation of the Uniform Trade Secrets Act, the court concluded that the defendants had "misappropriated" plaintiff's customer lists within the meaning of the Act. The court held, in accord with prior California law, that for information to be protectable as a trade secret, it need not be embodied in a written list but could also be in the employee's memory. Morlife, 66 Cal.Rptr.2d at 736 (citing Greenly v. Cooper, 77 Cal.App.3d 382, 143 Cal.Rptr. 514 (1978)). Hence, both before and after the adoption of the Uniform Trade Secrets Act, the California courts have held that customer lists that qualified as trade secrets would be protected whether written or in an employee's memory. The Morlife court concluded *947 that a former employee may use general knowledge, skill, and experience acquired in his or her former employment in competition with a former employer. However, the former employee may not use confidential information or trade secrets in doing so.
In MAI Sys. Corp., 991 F.2d at 521-22, the Ninth Circuit found that the fact that the defendant-employee never physically took any part of the plaintiff's customer database was irrelevant to a finding that he had misappropriated the employer's customer list under the Uniform Trade Secrets Act when he solicited the customers. Similarly, in Allen v. Johar, Inc., 308 Ark. 45, 823 S.W.2d 824, 827 (1992) (citing J. THOMAS McCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 29:5 (2d ed.1984)), the court held that the customer list was protectable as a trade secret and whether the information used was written down or was memorized was immaterial.
A number of states which have not yet adopted the Uniform Trade Secrets Act have also held, under prior trade secret common law, that trade secrets can be misappropriated by a taking in either written or memorized form. In Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 282 N.E.2d 921, 924 (1972), the court explained that the general rule is that in situations where there has been no express contract of an employee not to use or disclose confidential information entrusted to him during his employment, although an employee may carry away and use general skill or knowledge acquired during the course of his employment, he may be enjoined from using or disclosing confidential information so acquired. The court stated that the fact that no list or paper was taken does not prevent the former employee from being enjoined if the information which he gained through his employment and retained in his memory is confidential in nature. 282 N.E.2d at 924-25. In Van Prods. Co. v. General Welding & Fabricating Co., 419 Pa. 248, 213 A.2d 769, 777, 30 A.L.R.3d 612 (1965), the court recognized that some courts had drawn a distinction between an actual physical list that had been taken as opposed to a list carried away in the employee's memory. The court concluded that the distinction was not really meaningful, as it was based on the manner of taking rather than the character of the information taken. The court concluded that neither the manner of taking nor the fact that the employee himself had compiled the list was relevant; rather, as with any other trade secret, for customer information to be protectable it must be a particular secret of the business, of value to the employer and wrongfully appropriated by the employee. In M.N. Dannenbaum, Inc. v. Brummerhop, 840 S.W.2d 624 (Tex.Ct.App. 1992), the court explained that Texas courts had not applied the "memory rule" but had focused on the difficulty in obtaining customer lists and the method used to obtain the information.
In Callmann's treatise on unfair competition, the author recognizes many older cases which drew a distinction between written customer lists and those committed to memory, but states that
the distinction between written and memorized information should not be encouraged. The form of the information and the manner in which it is obtained are unimportant; the nature of the relationship and the employee's conduct should be the determinative factors. The distinction places a premium upon good memory and a penalty upon forgetfulness, and it cannot be justified either from a logical or pragmatic point of view.
2 CALLMAN, supra, § 14.31, at 109-10 (4th ed. Supp.1996) (footnotes omitted). The text cites newer cases holding that the modern trend clearly is to discard the written/memorized distinction. 2 CALLMAN, supra, § 14.31, at 225 n. 28. The unfairness of the trial court's rule excluding damages for memorized trade secrets is highlighted in the present case where both Rieck and Kiser engaged in essentially the same conduct and paid dramatically different damages based on the fact that Mr. Rieck claimed to have remembered his top 50 customers.
In the present case, the trial court's conclusion that only written confidential customer lists are protected conflicts with prior Washington law on trade secrets and essentially adds an element to the Uniform Trade Secret Act's definition of a trade secret. While the Act defines a trade secret as a *948 compilation of information that derives independent economic value from not being generally known or readily ascertainable to others and subject to reasonable efforts to maintain secrecy, the trial court added the element that such information be taken or misappropriated while in some tangible form. If an employee was privy to a secret formula of a manufacturing company, which was valuable and kept secret, it should not cease to be a trade secret if an employee committed it to memory. See Schulenburg v. Signatrol, Inc., 33 Ill.2d 379, 212 N.E.2d 865 (1965) (holding that it should make no difference whether information in blueprints had been pilfered by tracing the blueprints, had been memorized by someone with a photographic memory, or had been committed to memory by constant exposure to the prints while in the employ of the plaintiffs). While customer lists may or may not be trade secrets depending on the facts of the case, we conclude that trade secret protection does not depend on whether the list is taken in written form or memorized.

CONCLUSION
The form of information, whether written or memorized, is immaterial under the trade secrets statute; the Uniform Trade Secrets Act makes no distinction about the form of trade secrets. Whether the information is on a CD, a blueprint, a film, a recording, a hard paper copy or memorized by the employee, the inquiry is whether it meets the definition of a trade secret under the Act and whether it was misappropriated. Absent a contract to the contrary, an employee is free to compete against his or her former employer, and a former employee may use general knowledge, skills and experience acquired during the prior employment in competing with a former employer. However, an employee may not use or disclose trade secrets belonging to the former employer to actively solicit customers from a confidential customer list. In this case, the former employees actively solicited customers from the employer's customer lists, which the trial court found to be of independent value because unknown and subject to reasonable efforts to keep secret. The weight of modern authority is that the manner of taking a trade secret is irrelevant. Hence, we conclude the Court of Appeals was correct in holding that there is no legal distinction between written and memorized information under the Uniform Trade Secrets Act and in remanding for a recalculation of damages. We affirm.
DURHAM, JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, JJ., and DOLLIVER, J.P.T., KENNEDY, J.P.T., concur.
NOTES
[1] The letter from Mr. Rieck, on Potter, Inc. letterhead, and sent to Nowogroski Inc. clients, stated:

I am pleased to announce that two associates and myself from Nowogroski/Stanley R. Olson Insurance have merged with Potter, Leonard and Cahan Insurance Brokers of Seattle.
....
To transfer your insurance account to our new firm, it is necessary to have you complete and sign the enclosed appointment letter(s). If your insurance is with more than one company, I will need a separate, signed appointment letter for each one. Also, please add all policy numbers, if possible, and insurance company name(s). A prepaid return envelope is provided for your convenience.
I am very happy about the opportunity to continue servicing your insurance needs.
...
Ex. 16.
Following a letter from Nowogroski Inc.'s attorney, Mr. Rieck omitted the term "merged" from the letter but continued to actively solicit Nowogroski Inc. customers.
[2] The existence of a contract protecting trade secrets does not preclude a separate cause of action in tort under the provisions defining trade secrets. The terms of a contract may be relevant to such issues as the existence of a protectable trade secret or the creation of a duty of confidence. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 cmt. a, at 454 (1995); see also Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 48, 738 P.2d 665 (1987).
[3] The RESTATEMENT (THIRD) OF UNFAIR COMPETITION (1995), which analyzes extensive case law decided under the Uniform Trade Secrets Act, points to industry practice as a potentially valuable clue to expected and proper behavior in considering whether a "relationship of confidence" exists. The employment relationship is a confidential relationship which gives rise to a postemployment duty not to disclose trade secrets. Victoria A. Cundiff, The New ALI Restatement and Trade Secrets, in PATENTS, COPYRIGHTS, TRADEMARKS, AND LITERARY PROPERTY *697-98 (PLI Handbook Series No. GA-3948, Sept. 1995), available in Westlaw 416/Pat 683. In the present case, the employees offered to purchase their customers' accounts prior to leaving employment, and when a mutually agreeable price could not be reached they simply used the confidential customer list to attempt to take the customers. Additionally, based on the evidence in this record, it appears to be the accepted practice in the insurance industry to buy books of insurance for a percentage of the yearly commissions. Nowogroski Inc. had spent many hundreds of thousands of dollars over a period of years purchasing client accounts from other insurance companies. Also, the employment manual and employee agreements informed employees that the client information was a trade secret. Mr. Rieck testified that he knew that customer lists of the insurance agency were confidential information.
[4] It is useful to understand the concept of "misappropriation" in a case involving customer lists which qualify as trade secrets. In considering the concept of misappropriation, a number of courts have distinguished between active solicitation of customers by former employees and a professional announcement of a change of employment. There is no question here that the former employees actively solicited their employers' clients. The California Uniform Trade Secrets Act includes the same definition of "misappropriation" as the Washington Act. The California Court of Appeals recently explained that:

The letter sent to former [employers'] customers over [the employee's] signature went beyond merely announcing his new affiliation and actively solicited business for his new company....
The question of whether a former employee's particular disclosure or use of customer information is permissible as falling within the right to use general knowledge and experience gained in former employment, or whether it constitutes a prohibited misuse of a former employer's trade secrets, has been the frequent subject of litigation in California. While California courts have shown a reluctance to impose an unconditional prohibition on doing business with customers of the former employer, they have prohibited the unlawful use of trade secrets to solicit those customers. In cases decided both before and after the adoption of the UTSA, the decisions have equated acts of solicitation with "use" or "misappropriation" of protected information.... [O]ur Supreme Court provided this rough definition of solicitation: " `Solicit' ... means: `To appeal to (for something); to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving....'" By contrast, "[m]erely informing customers of one's former employer of a change in employment, without more, is not solicitation."
Morlife, Inc. v. Perry, 56 Cal.App.4th 1514, 66 Cal.Rptr.2d 731, 737-38 (1997) (citations omitted); see also MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993).
[5] The Uniform Trade Secrets Act displaces conflicting tort, restitutionary and other law pertaining to civil liability for misappropriation of a trade secret, but does not affect contractual or other civil liability based on misappropriation of a trade secret or criminal liability for misappropriation of a trade secret. RCW 19.108.900. This state's common law that trade secrets may include both tangible and intangible information does not conflict with any provision in the Uniform Trade Secrets Act.
[6] The Georgia court's distinction between written and memorized customer lists was based on Georgia's common law prior to its adoption of the Uniform Trade Secrets Act, which declined to protect secrets contained in an employee's memory. The court explained that it would not presume that the legislature, in adopting the Uniform Trade Secrets Act, was abrogating prior Georgia law on the subject. Avnet, Inc. v. Wyle Lab., Inc. 263 Ga. 615, 437 S.E.2d 302, 305 (1993). Under this reasoning, the opposite result would be true in Washington because, as noted above, this state's common law did protect customer lists, whether written or remembered, prior the adoption of the Uniform Trade Secrets Act.