154 P.3d 236 (2007)
Robert C. WOO, D.D.S, Plaintiff/Appellant,
v.
FIREMAN'S FUND INSURANCE COMPANY, a California corporation; and National Surety Corporation, an Illinois corporation, Defendants/Respondents, and
Depositors Insurance Company, and Iowa corporation; and The Pacific Underwriters Corporation, a Washington corporation, Defendants.
No. 56944-9-I.
Court of Appeals of Washington, Division 1.
March 5, 2007.
*237 Richard B. Kilpatrick, Attorney at Law, Bellevue, WA, for Appellant.
Emilia L. Sweeney, Lane Powell PC, Seattle, WA, Michael Barr King, Talmadge Law Group PLLC, Tukwila, WA, for Respondent.
BECKER, J.
¶ 1 At issue is an order sealing insurance company claims manuals that were used as exhibits at trial of a bad faith claim. The trial court erred in concluding that the manuals deserved protection as a trade secret. They are not novel and reasonable efforts were not made to protect their secrecy.
¶ 2 This lawsuit began when Robert Woo, a dentist, played an embarrassing practical joke on an employee while she was under *238 anesthesia during a dental procedure. The employee sued Woo alleging intentional torts as well as medical negligence. At the time of the incident, Fireman's Fund was Woo's insurer. Fireman's Fund declined to defend Woo from the allegations of intentional torts. Woo settled the claim with his employee, and then sued Fireman's Fund for bad faith and violations of the Consumer Protection Act.
¶ 3 During discovery Fireman's Fund obtained the entry of a pre-trial protective order controlling disclosure of documents designated by Fireman's Fund as "confidential". Any confidential information attached to pleadings was to be filed under seal. Upon the final disposition of the action all confidential documents received in discovery were to be returned or destroyed. The protective order, entered in December of 2002, specifically designated all claims and training manuals produced by Fireman's Fund as confidential. The basis for this designation was Fireman's Fund's assertion that the manuals were trade secrets.
¶ 4 Fireman's Fund moved in limine to exclude the claims manuals from trial as irrelevant and on the further ground that being subject to the protective order made them inadmissible in a judicial proceeding.[1] The trial court denied this motion. At trial, the court admitted excerpts from the manuals into evidence as exhibits 8, 11, 16, and 51. Exhibit 8, the largest, was a portion of Fireman's Fund Administrative Reference Guide, the primary manual used by the claims department. Fireman's Fund itself offered Exhibit 51, an internal claims-handling checklist. Fireman's Fund did not attempt to seal or otherwise protect these four exhibits when they were admitted and used at the trial.
¶ 5 The court entered judgment on a verdict in favor of Woo on the bad faith and Consumer Protection Act claims on September 19, 2003. The judgment against Fireman's Fund was reversed by this court and is presently pending further review. Woo v. Fireman's Fund Ins. Co., 128 Wash.App. 95, 114 P.3d 681 (2005), review granted, 156 Wash.2d 1035, 134 P.3d 1171 (2006). The four exhibits containing excerpts from the claims manuals remained with the trial court until Fireman's Fund appealed the bad faith verdict, and then they were transferred to this court.
¶ 6 While the appeal was pending, the parties began to discuss whether the trial exhibits were still to be treated as confidential. The issue apparently came to a head when Woo was about to disseminate the claims manuals as part of a seminar presentation on bad faith claims. Fireman's Fund sent him a letter warning him not to do this as the documents were still subject to the protective order. Woo filed a motion seeking to clarify that the exhibits were public in nature. Over Fireman's Fund's opposition, the trial court agreed with Woo that the effect of using the documents at trial was to make them fully open for public access and use. The trial court ruled that under GR 15, there had to be a motion and hearing before trial exhibits could be sealed.[2]
¶ 7 Fireman's Fund then brought a motion under GR 15 to seal the portions of the claims manuals admitted at trial on the basis that they were trade secrets.[3] The trial *239 court granted this motion and sealed the exhibits in August 2005.
¶ 8 In this appeal, Woo asks this court to reverse the trial court's order sealing the exhibits.
¶ 9 Our state constitution requires that "Justice in all cases shall be administered openly". Const. art. I, § 10. Documents filed with the court in anticipation of a court decision are presumptively open to the public unless the advocate of sealing presents "a compelling interest which overrides the public's right to the open administration of justice." Rufer v. Abbott Laboratories, 154 Wash.2d 530, 549, 114 P.3d 1182 (2005). Because such materials become "part of the court's decision-making process", they come within the purview of Article 1, § 10. Dreiling v. Jain, 151 Wash.2d 900, 910, 93 P.3d 861 (2004).
¶ 10 For each particular document that a party seeks to protect, there must be a showing that specific prejudice or harm will result if no protective order is granted. Dreiling, 151 Wash.2d at 916, 93 P.3d 861. Unsubstantiated allegations will not satisfy the rule. The requesting party must support its request, where possible, by affidavits and concrete examples. Entire documents should not be protected where mere redaction of sensitive items will satisfy the need for secrecy. Particularized findings must be made by the trial court to support meaningful review. Dreiling, 151 Wash.2d at 917, 93 P.3d 861.
¶ 11 We review a trial court's decision to seal or unseal records for abuse of discretion. Rufer, 154 Wash.2d at 540, 114 P.3d 1182. Abuse of discretion occurs when a trial court's decision is manifestly unreasonable or is based on untenable reasons or grounds. State v. C.J., 148 Wash.2d 672, 686, 63 P.3d 765 (2003).
¶ 12 The trial court ordered the four exhibits sealed in their entirety after finding that they were trade secrets. The court found the need for protection could not be satisfied merely by redacting sensitive items because "the manuals are compilations of information that constitute a trade secret as a whole."[4]
¶ 13 Woo contends the record does not support the finding that the claims manuals are trade secrets. An appellate court reviews factual findings under the substantial evidence standard. Nagle v. Snohomish, 129 Wash.App. 703, 709, 119 P.3d 914 (2005).
¶ 14 In Washington, the definition of a trade secret is statutory:
"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
RCW 19.108.010(4).
¶ 15 Fireman's Fund relies on Hamilton v. State Farm Mutual Automobile Insurance Co., 204 F.R.D. 420 (D.Ind.2001), in which a federal district court magistrate determined that an insurance company's claims manuals qualified as a trade secret. The court found the documents had been developed for business use "with considerable time, effort, and expense"; they contained "claims handling philosophies and strategies unique to State Farm"; a competitor would gain economic advantage by having access; and the materials were kept in locking cabinets away from public access. Hamilton, 204 F.R.D. at 423. Hamilton's analysis is too conclusory to be helpful. Woo does not contend that claims manuals can never be trade secrets. The question is whether these particular manuals are trade secrets, a fact-specific inquiry.
¶ 16 To prove that the manuals are trade secrets, Fireman's Fund submitted brief declarations from three Claims Directors. According to these declarations, the claims manuals "took several thousand people hours to produce and have evolved over several *240 years."[5] There would be "a serious loss of our property interest" if they were made public.[6] The manuals contained "claims handling philosophies and strategies believed to be unique to Fireman's Fund."[7] The company believed that allowing a competitor to gain access to the materials "would result in economic value to the competitor and place it in a competitive advantage."[8] Smaller insurance companies in particular would gain a competitive advantage "if they could simply copy the materials it took thousands of hours for Fireman's Fund to prepare."[9]
¶ 17 According to Fireman's Fund, these declarations prove that the manuals compile information in a particular format unknown to others and are therefore like a secret formula for a distinctive product made up of readily available materials. It is true that the use of commonly available materials in an innovative way can qualify as a trade secret, and the proponent of a trade secret "need not prove that every element of an information compilation is unavailable elsewhere". Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 50, 738 P.2d 665 (1987). But to qualify for protection as a trade secret, the combination must still be shown to have "novelty and uniqueness." Machen, Inc. v. Aircraft Design, Inc., 65 Wash.App. 319, 327, 828 P.2d 73 (1992), overruled on other grounds, Waterjet Technology, Inc. v. Flow Intern. Corp., 140 Wash.2d 313, 323, 996 P.2d 598(2000).
¶ 18 The declarations of the claims managers are too conclusory to prove that the claims manuals compile information in an innovative way. The declarations do not supply any concrete examples to illustrate how the strategies or philosophies of Fireman's Fund claims handling procedures differ materially from the strategies or philosophies of other insurers.
¶ 19 The fact that the manuals go into many pages of detail on the fine points of handling claims does not make them novel. See Buffets, Inc. v. Klinke, 73 F.3d 965, 968 (9th Cir.1996) (fried chicken recipes were little more than "typical American fare"). The argument that smaller competitors will benefit from the opportunity to copy the Fireman's Fund claims manuals rather than having to write up their own is also too speculative and conclusory to support a finding that the manuals are unique. A trade secret must derive independent economic value from not being known to or generally ascertainable by others who can obtain economic value from their disclosure or use. The declarations provide no proof that any rival company would want to copy the manuals nor do they quantify in any meaningful way the competitive advantage that the hypothetical plagiarizer would enjoy. See Buffets, Inc., 73 F.3d at 969 (restaurant chain asserting trade secret protection for fried chicken recipes did not demonstrate any relationship between competitors' lack of success and unavailability of the recipes).
¶ 20 Our own review of the sealed exhibits confirms what Woo alleges: the manuals simply set out good claims practices and philosophies that would be obvious to any insurance company setting out to prepare a claims manual. For example, a good coverage investigation begins with "a thorough investigation of the facts."[10] Before deciding on coverage, the questions of "who did what, where, why, when and how" must be addressed.[11] Sometimes "it will be necessary to turn down claims" and it is important to explain the reason to the policyholder, striving not to create animosity.[12]
¶ 21 Fireman's Fund argues that Woo's own efforts to unseal the manuals prove they have independent economic value and are unavailable elsewhere. But Woo's interest in obtaining the claims manuals does not prove that the information has economic *241 value in the insurance trade. Woo's lawyer proposes to disseminate the manuals for impeachment purposes in litigation: "These manuals do have extraordinary value, but their value is not to competitors, it is to those who work in the justice system. These manuals directly contradict insurers' frequent claims about what is reasonable claim handling."[13] Woo's interest in the claims manuals is similar to a newspaper's interest in publicizing documents perceived as newsworthy. To show that a newspaper derives economic value from publicizing a document is not the same as proving that the document itself derives independent economic value from not being known.
¶ 22 Another requirement for trade secrets is that the holder must make reasonable efforts to maintain the secrecy of the material. RCW 19.108.010(4)(b). Allowing private information to become public, even through carelessness, precludes protection as a trade secret:
Reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis", and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.
Machen, Inc., 65 Wash.App. at 327, 828 P.2d 73 (emphasis in original).
¶ 23 The trial court's order sealing the exhibits does not identify any efforts Fireman's Fund took to protect the secrecy of the claims manuals. Fireman's Fund did not submit the exhibits under seal or ask to have them segregated from other exhibits. Fireman's Fund did not ask the court to safeguard the manuals from public inspection at trial when they were openly discussed. Once the claims manuals were introduced unsealed at trial, they were fully available for public access and use.[14] They remained that way until the sealing order was entered some two years later.[15]
¶ 24 Fireman's Fund speculates that it is unlikely anyone watching the trial took the opportunity to inspect the manuals. Fireman's Fund also points out that the exhibits were kept in court storerooms where they would have been somewhat difficult to find. These observations are beside the point; two years of inattention is not consistent with a genuine concern about protecting valuable secrets.
¶ 25 Fireman's Fund claims that its motion in limine to exclude the claims manuals, once denied, became a standing objection amounting to a reasonable effort under the circumstances to maintain the secrecy of the documents. We disagree. The motion in limine sought only to prevent the documents from being admitted. Once the trial court found them admissible and it became clear they would be used at trial, it was up to Fireman's Fund to take steps to ensure they were not disseminated more widely than necessary for the disposition of the case. Fireman's Fund did not take any such steps.
¶ 26 Fireman's Fund contends that "Washington courts have specifically rejected the notion that a party waives its right to trade secret protection by introduction of a portion of that trade secret at trial"[16], citing Penberthy Electromelt International Inc. v. Gypsum Co., 38 Wash.App. 514, 521-522, 686 P.2d 1138 (1984). Penberthy does not stand for that proposition because there, the allegedly sensitive information was not introduced at trial. The trial court found that technical information about the design of a furnace was a trade secret, and properly limited cross-examination of a witness so as to prevent disclosure of the information.
¶ 27 Our conclusion that Fireman's Fund did not make reasonable efforts to maintain the secrecy of the exhibits at trial and afterwards is consistent with a case cited by Woo, stating a rule that the release of information in open court operates as a waiver of any *242 rights a party had to restrict its future use if no effort is made to limit its disclosure. Littlejohn v. BIC Corp., 851 F.2d 673, 680 (3d Cir.1988). In Littlejohn, the defendant's corporate documents covered by a pre-trial protective order were admitted into evidence in a civil trial. The public airing of the information, without a contemporaneous assertion of a continuing right to secrecy, waived whatever rights to confidentiality might have been created by the protective order.
¶ 28 Following Littlejohn as well as the specific requirement for reasonable efforts in RCW 19.108.010(4)(b), we conclude that Fireman's Fund's failure to take steps to limit public access to the trial exhibits waived protection not only under the specific provisions of the trade secret statute, but also under a more general rule that unprotected use of confidential material at trial operates as a waiver of confidentiality.
¶ 29 In summary, there is insufficient evidence of a trade secret. The manuals lack novelty, and Fireman's Fund has not maintained their secrecy. The post-trial order sealing the exhibits prevents full public scrutiny of decisions our courts have made, and are continuing to make, with respect to Woo's bad faith claim. Because the manuals are not trade secrets, Fireman's Fund does not present a compelling interest which overrides the public's right to the open administration of justice. The trial court lacked a tenable basis for sealing the exhibits and abused its discretion by doing so.
¶ 30 As a supplementary basis for reversal of the sealing order, Woo invokes the constitutional mandate to avoid unnecessary delay in the justice system.[17] He contends the order sealing files and the pre-trial protective order and the order sealing files unnecessarily prevented him from sharing the fruits of discovery with lawyers engaged in similar litigation. He cites a case in which a federal court, faced with an insurer's request for a Rule 26 protective order covering certain claims manuals and underwriting files, denied it as supported only by conclusory and unsubstantiated allegations of harm.
Moreover, if the basis for defendants' motion is to prevent information from being disseminated to other potential litigants, then defendants' application must fail. . . . The courts have emphatically held that a protective order cannot be issued simply because it may be detrimental to the movant in other lawsuits. Using fruits of discovery from one lawsuit in another litigation, and even in collaboration among various plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure.
Nestle Foods Corp. v. Aetna Casualty and Surety Co., 129 F.R.D. 483, 486 (D.N.J.1990) (citations omitted).
¶ 31 We do not address the argument based on the constitutional mandate to avoid unnecessary delay, as we can dispose of this case without considering it. And as the argument was not raised below, we have no record developed in response to this particular concern.
¶ 32 Woo contends that GR 15 necessarily contemplates an in-person hearing with an opportunity for oral argument. This is not so. The requirements are simply "reasonable notice to the nonmoving party and a hearing".[18] "Due process does not require any particular form or procedure. It requires only that a party receive proper notice of proceedings and an opportunity to present its position before a competent tribunal." Rivers v. Wash. State Conference of Mason Contractors, 145 Wash.2d 674, 697, 41 P.3d 1175 (2002). Because Woo had a fair opportunity to challenge Fireman's Fund's motion to seal by presenting detailed briefing to the trial court, we conclude the court did not err by denying Woo's request for oral argument.
¶ 33 The order sealing the exhibits is reversed. The trial court is directed to unseal the exhibits. This court's order keeping the *243 exhibits under seal pending disposition of this appeal is vacated.
WE CONCUR: BAKER and GROSSE, JJ.
NOTES
[1] Clerk's Papers at 523-524.
[2] Clerk's Papers at 183 (Order Regarding Plaintiff's Motion for Reconsideration, June 6, 2005).

GR 15 states in part:
.. The clerk shall maintain all documents and materials filed with the court, and shall make available for public examination all files, cases, records, documents, or materials which have not been ordered destroyed or sealed. . . . The contents of sealed documents or records within a case are not available for viewing by the public.
. . .
Sealing of Files or Records. On motion of any party to a civil proceeding, or on the court's own motion, and after reasonable notice to the nonmoving party and a hearing, the court may order the sealing of any files and records in the proceeding (i) to further an order entered under CR 12(f) or a protective order entered under CR 26(c); or (ii) under compelling circumstances where justice so requires.
GR 15(a); (b)(1); (c)(2)(B).
[3] Because Fireman's Fund's appeal of the bad faith judgment was still pending in this court and the exhibits had been transferred here, the trial court required Fireman's Fund to first obtain this court's permission to proceed with this motion in the trial court.
[4] Clerk's Papers at 334 (Order Granting Defendants' Renewed Motion to Seal, August 8, 2005).
[5] Clerk's Papers at 132.
[6] Clerk's Papers at 58.
[7] Clerk's Papers at 594.
[8] Clerk's Papers at 215.
[9] Clerk's Papers at 218.
[10] Exhibit 8 at 00729.
[11] Exhibit 8 at 00731.
[12] Exhibit 8 at 00190.
[13] Appellant's Reply Brief at 11.
[14] Clerk's Papers at 184 (Order Regarding Plaintiff's Motion for Reconsideration, June 6, 2005).
[15] Clerk's Papers at 335 (Order Granting Defendants' Renewed Motion to Seal, August 8, 2005).
[16] Respondent's Brief at 31.
[17] Const. art. I, § 10 states: "Justice in all cases shall be administered openly, and without unnecessary delay."
[18] GR 15(c)(2)(B) states in part: "On motion of any party to a civil proceeding . . . and after reasonable notice to the nonmoving party and a hearing, the court may order the sealing of any files and records in the proceeding. . . ."