[No. 36624-0-II.   Division Two.   March 31, 2009.]

COLLEEN MCCALLUM, *Respondent*, v. ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, *Petitioner*.

---

[24] RCW 10.77.086(1).

414

416

*Marilee C. Erickson* (of *Reed McClure*) (*Bennett E. Cooper*, of counsel), for petitioner.

*Michael J. Fisher* (of *Rush Hannula Harkins & Kyler, LLP*); and *Karen K. Koehler* and *Ray W. Kahler* (of *Stritmatter Kessler Whelan Coluccio*), for respondent.

¶1 BRIDGEWATER, J. — Allstate Property and Casualty Insurance Company sought discretionary review of the trial court's denial of a protection order to limit the scope of discovery in a bad faith lawsuit. Allstate sought to limit discovery of its claim manuals, training manual, claim bulletins, and the "McKinsey documents." We granted discretionary review and hold that Allstate did not show specific prejudice or harm for any of the documents; thus, it did not establish good cause to limit the scope of discovery. We affirm.

## FACTS

¶2 Colleen McCallum was involved in motor vehicle accident on May 2, 2004, with another motorist and a phantom vehicle. The phantom vehicle caused the accident. At the time of the accident, McCallum had an Allstate automobile policy that provided uninsured motorist benefits. Her uninsured motorist policy included coverage in the amount of $25,000 per person and $50,000 per accident, and personal injury protection insurance in the amount of $10,000.

¶3 McCallum incurred over $23,000 in medical expenses. Allstate evaluated her claim and extended a settlement offer of $9,000. But McCallum declined the offer because she did not think it was reasonable. Instead, in

compliance with her Allstate policy, she filed a lawsuit in King County to pursue her uninsured motorist claim. She litigated her claim through mandatory arbitration, seeking to obtain $25,000 under her uninsured motorist policy limits. The arbitrator awarded McCallum the jurisdictional maximum of $50,000.

¶4 Following arbitration, McCallum filed this lawsuit against Allstate, alleging, among other things, bad faith violations of the Consumer Protection Act (CPA)[1] based on Allstate's handling of her uninsured motorist claim. During discovery, McCallum requested that Allstate provide documentation of its claim handling process. She insisted that those documents were relevant to her bad faith claims against Allstate, asserting that they documented Allstate's alleged national policy to drag out the claims process thereby making it as expensive, long, and drawn out as possible.

¶5 Allstate objected to two separate discovery requests to provide the documents. McCallum, therefore, sought an order to compel discovery. In response, Allstate filed a motion for a protective order of the documents. Specifically, Allstate moved for an order providing that its claim manuals, claim bulletins, Claim Core Process Redesign Implementation Training Manual (CCPR), and the McKinsey documents[2] are confidential, commercial information

---

[1] Ch. 19.86 RCW.

[2] McKinsey & Company is a business consulting firm that Allstate hired in the 1990s to analyze its automobile bodily injury claims and handling procedures. The concepts and motivations that McKinsey suggested are summarized in a series of slides, which have become known as the McKinsey documents. Allstate implemented changes to its business arising out of the McKinsey documents in its CCPR. *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 324 (Ind. Ct. App. 2006). In this action Allstate has withdrawn its attempt to preserve the confidentiality of these documents because it made the McKinsey documents public by publishing them on its web site, but Allstate maintains its protective stance with regard to the other documents listed. Allstate also has withdrawn its assignment of error regarding the propriety of the trial court's ruling striking a second declaration of local claims representative Robert Bjorback revising his original declaration, because it concerned only the McKinsey documents. Consequently, we do not address the issues pertaining to the McKinsey documents or the trial court's ruling on the second declaration.

and/or trade secrets that may be produced only subject to confidentiality protections. To support its motion, Allstate submitted declarations from its assistant vice president, Christine Sullivan, and a local claims representative, Robert Bjorback. Bjorback's declaration addressed the claim manuals, claim bulletins, and CCPR.

¶6 The trial court granted Allstate's protective order for Allstate's claim manuals, claim bulletins, CCPR, and McKinsey documents. The order limited use of the documents to this litigation and limited distribution of the documents to McCallum, her counsel, and her experts. Allstate provided the documents that McCallum requested.

¶7 Soon after, McCallum deposed Bjorback and Sullivan as to their declarations. McCallum pressed Sullivan about the McKinsey documents in her deposition. Additionally, Bjorback admitted that he had no knowledge as to how much time, manpower, or financial recourses Allstate spent to prepare its manuals and procedures. Bjorback also testified in his deposition that he had no knowledge of Allstate's competitors' business practices, leading McCallum to conclude that, contrary to his declaration statements, Bjorback had no idea whether Allstate's processes are unique or whether its competitors would want them. In addition, Bjorback testified that Allstate was compelled to produce the 1995 version of the CCPR in another case, *Tastad v. Allstate Ins. Co.*, noted at 86 Wn. App. 1118 (1997), despite his declaration stating that the materials were trade secrets and/or confidential. He was unsure of the differences between the 1995 version and the current version of the claims manual. He had not "compared them." Clerk's Papers at 899. As a result of the discrepancies between Bjorback's and Sullivan's declarations and deposition testimony, McCallum moved the trial court to vacate the protective order. Allstate opposed the motion.

¶8 After briefing and a hearing, the trial court granted McCallum's motion. It found that, based on the discrepancies between their declarations and deposition testimony, Sullivan and Bjorback lacked the personal knowledge on

which they based their conclusions in their declarations. Accordingly, the trial court ordered Allstate to comply with McCallum's original discovery requests and provide the documents at issue without seal or protection.

¶9 Allstate then moved to stay the order vacating the protective order until after reconsideration or discretionary review. The trial court denied that motion. Allstate moved for reconsideration of its motion to vacate the protective order, arguing that the trial court abused its discretion when it granted the order because McCallum misrepresented the facts. The trial court also denied that motion. It found that Allstate did not meet its burden to show why the documents warranted protection.

¶10 We granted Allstate's motion for discretionary review and stayed the trial court's order vacating the protective order. Allstate maintains that its appeal of the remaining documents at issue—the claim manuals, claim bulletins, and CCPR—is not moot. Those documents, according to Allstate, require a protective order.[3]

## ANALYSIS

¶11 The crux of this appeal is whether the trial court erred when it vacated Allstate's protective order and denied Allstate's motion for reconsideration. Generally, we review a trial court's discovery order for an abuse of discretion. *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006); *Dreiling v. Jain*, 151 Wn.2d 900, 907, 93 P.3d 861 (2004). We employ the same standard when

---

[3] McCallum maintains, as she has throughout this litigation, that the documents should not be protected, so as to allow discovery sharing among attorneys in other cases being litigated against Allstate. According to McCallum, Allstate has been playing a game of "hide and seek" in responding to discovery requests in bad faith questions throughout the country, thereby requiring plaintiffs to expend significant resources litigating discovery disputes to obtain the claim manuals, claim bulletins, and CCPR. Br. of Resp't at 28. Although both parties addressed this issue at oral argument, it was not at issue before the trial court, nor did the trial court rule on it; therefore, we do not address whether the "sharing" of discovery nationwide poses a problem. *See* RAP 12.1(a). We address only the denial of the protection order and its propriety.

reviewing a trial court's denial of a motion for reconsideration. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). But if a trial court relied on an improper legal rule to arrive at its decision, an appellate court will remand to the trial court to apply the correct rule. *Dreiling*, 151 Wn.2d at 907. We review questions of law de novo. *Dreiling*, 151 Wn.2d at 908.

## I. PRETRIAL DISCOVERY PROTECTIVE ORDER

█ ¶12 In determining whether court records may be sealed from public disclosure, a court begins with the presumption of openness. *Dreiling*, 151 Wn.2d at 908; *see also Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005). Indeed, the Washington State Constitution requires that "[j]ustice in all cases shall be administered openly." CONST. art. I, § 10. But a party may overcome this presumption of openness by establishing certain court records should be sealed "to protect other significant and fundamental rights." *Dreiling*, 151 Wn.2d at 909.

██ ¶13 The Washington Supreme Court has outlined standards applicable for sealing records in three distinct categories: the raw fruits of discovery, trial proceedings, and dispositive motions and records attached to those motions. *Rufer*, 154 Wn.2d at 540. The documents at issue in this case qualify as the fruits of raw discovery. *See Rufer*, 154 Wn.2d at 540-41. "Courts are empowered to limit the scope of discovery and the use of its fruits '[u]pon motion' and 'for good cause shown.'" *Rufer*, 154 Wn.2d at 541 (alteration in original) (citing CR 26(c)).[4]

---

[4] CR 26(c) provides in pertinent part:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.

¶14 Here, the parties disagree on what standard Washington courts apply to determine whether Allstate has shown "good cause" to seal the documents at issue. Allstate maintains that good cause is a "flexible standard that reflects the circumstances presented in the particular case." Br. of Appellant at 12. It further argues that to show good cause, it was not required to establish specific harm that would result if the trial court refused to grant its protective order. Conversely, McCallum maintains that demonstrating specific harm is an element of showing good cause.

¶15 Our Supreme Court recently addressed this issue in *Dreiling*. To begin, the *Dreiling* court emphasized the distinction between protecting documents attached to dispositive motions and mere discovery. *Dreiling*, 151 Wn.2d at 909. It reiterated that a trial court may seal mere discovery for good cause shown because " '[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.' " *Dreiling*, 151 Wn.2d at 909 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (*Rhinehart* II), *cert. denied*, 467 U.S. 1230 (1984)). The *Dreiling* court then focused most of its analysis on the standards for sealing dispositive motions and records attached to those motions. *See Dreiling*, 151 Wn.2d at 913-15. But it concluded its decision by setting forth additional considerations trial courts should contemplate when deciding a motion to seal documents. *See Dreiling*, 151 Wn.2d at 916.

¶16 The *Dreiling* court explicitly adopted the principles and standards that the Ninth Circuit articulated in *Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122 (9th Cir. 2003). *Dreiling*, 151 Wn.2d at 916. In doing so, it held that *Foltz* "provides an apt guide to the appropriate mechanics and procedures to be followed when a trial court is confronted with a motion to place documents under seal, *whether the documents are pure discovery or are filed in support of dispositive court action.*" *Dreiling*, 151 Wn.2d at 916 (emphasis added).

¶17 In *Foltz*, the parties agreed to seek three protective orders, including a blanket protective order covering all discovery and prohibiting dissemination of disclosed documents. *Foltz*, 331 F.3d at 1128. At the conclusion of the case, the district court granted the parties' agreed-to protective orders. *Foltz*, 331 F.3d at 1128. Later, however, public interest groups moved to intervene to gain access to the sealed discovery material. *Foltz*, 331 F.3d at 1128. The district court refused to modify the protective orders. *Foltz*, 331 F.3d at 1129. The Ninth Circuit, interpreting Federal Rules of Civil Procedure 26(c),[5] held that trial courts should generally refrain from approving blanket protective orders. *Foltz*, 331 F.3d at 1131.

¶18 In reaching its decision, the *Foltz* court concluded that a party seeking a protective order bears the burden of showing good cause for each particular document it seeks to protect. To establish good cause, the party must show that specific prejudice or harm will result if no protective order is granted. *Foltz*, 331 F.3d at 1130; *Dreiling*, 151 Wn.2d at 916. Unsubstantiated allegations of harm will not suffice. *Foltz*, 331 F.3d at 1130; *Dreiling*, 151 Wn.2d at 916. Where possible, the party must provide specific factual demonstrations supported by affidavits and concrete examples rather than by broad or conclusory allegations of potential harm. *Foltz*, 331 F.3d at 1130; *Dreiling*, 151 Wn.2d at 916-17.

¶19 But the *Foltz* line of cases is not the only guidance we have to decipher the meaning of "good cause shown" within CR 26(c). In *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 654 P.2d 673 (1982) (*Rhinehart* I), *aff'd*, 467 U.S. 20, *cert. denied*, 467 U.S. 1230, our state Supreme Court addressed the constitutionality of CR 26(c). It further addressed whether a trial court properly compelled plaintiffs in a libel action to disclose certain personal information during discovery, though it prohibited

---

[5] The Washington rule that provides for the scope of civil discovery and the issuance of protective orders is virtually identical to its counterpart in the Federal Rules of Civil Procedure. *Rhinehart* II, 467 U.S. at 30 n.14; *compare* CR 26(c) *with* Fed. R. Civ. P. 26(c).

the defendant newspapers from publishing information obtained from the discovery order. *Rhinehart* I, 98 Wn.2d at 253-54. During its analysis, the Washington Supreme Court stated:

> In determining whether a protective order is needed and appropriate, the court properly weighs the respective interests of the parties. The judge's major concern should be the facilitation of the discovery process and the protection of the integrity of that process, which necessarily involves consideration of the privacy interest of the parties and, in the ordinary case at least, does not require or condone publicity.

*Rhinehart* I, 98 Wn.2d at 256; *see also John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 778, 779, 819 P.2d 370 (1991) (stating that in exercising its discretion to grant a discovery protective order, a trial court must identify and weigh the comparative and compelling public and private interests of the parties). The United States Supreme Court affirmed, reiterating that "[a]lthough [CR 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Rhinehart* II, 467 U.S. at 35 n.21; *see also T.S.*, 157 Wn.2d at 430-31; *Doe*, 117 Wn.2d at 780-89.

██ ¶20 Accordingly, in determining whether a protective order is needed, we must decide whether a party has shown good cause to limit the scope of discovery. CR 26(c); *Rufer*, 154 Wn.2d at 541. To establish good cause, the party should show specific prejudice or harm will result if no protective order is issued. *See Dreiling*, 151 Wn.2d at 916-17 (citing *Foltz*, 331 F.3d at 1130). When possible, the party must use affidavits and concrete examples to demonstrate specific facts showing harm; broad or conclusory allegations of potential harm may not be enough. *Dreiling*, 151 Wn.2d at 916-17 (citing *Foltz*, 331 F.3d at 1130). And finally, in exercising its discretion to issue a protective order under CR 26(c) for raw fruits of discovery, a court must weigh the respective interests of the parties. *Rhinehart* I, 98 Wn.2d at 236; *see also T.S.*, 157 Wn.2d at 431; *Doe*, 117

Wn.2d at 778. These are the standards we apply to determine whether the trial court erroneously vacated Allstate's protective order for its claim manuals, claim bulletins, and the CCPR.

## A. PROPER STANDARD APPLIED

¶21 The trial court applied the proper standard here. It originally granted the protective order, finding that the documents were trade secrets or otherwise confidential information. "Trade secrets" include compilations, methods, and processes that

(a) [d]erive[ ] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) [are] the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4).

¶22 One of the legislature's purposes in enacting chapter 19.108 RCW, the Uniform Trade Secrets Act, was to protect commercial information concerning business methods. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 263, 884 P.2d 592 (1994) (*P.A.W.S.*). A key factor in determining whether information has "independent economic value" under the statute is the effort and expense that was expended in developing the information. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 438, 971 P.2d 936 (1999). A trade secret can be information about the results of lengthy and expensive research that proves a certain process will not work. UNIF. TRADE SECRETS ACT § 1 cmt. (amended 1985), 14 U.L.A. 529, 538 (2005); *see also Telex Corp. v. Int'l Bus. Machs. Corp.*, 510 F.2d 894 (trade secrets may include information regarding unmarketed product), *cert. dismissed*, 423 U.S. 802 (1975); *P.A.W.S.*, 125 Wn.2d at 262 (unfunded grant proposals can be trade secrets).

¶23 In *Woo v. Fireman's Fund Insurance Co.*, 137 Wn. App. 480, 154 P.3d 236, *rev'd in part on other grounds*, 161 Wn.2d 43, 164 P.3d 454 (2007), Division One of this court addressed whether Fireman's insurance claim manuals deserved protection as trade secrets. *Woo*, 137 Wn. App. at 484. Although the *Woo* court was analyzing the issue in the context of GR 15 rather than CR 26(c), the trade secret analysis is helpful nonetheless.

¶24 The *Woo* court focused on whether Fireman's Fund established that the manuals had " 'novelty and uniqueness.' " *Woo*, 137 Wn. App. at 489 (quoting *Machen, Inc. v. Aircraft Design, Inc.*, 65 Wn. App. 319, 327, 828 P.2d 73, *review denied*, 120 Wn.2d 1007 (1992), *overruled on other grounds by Waterjet Tech., Inc. v. Flow Int'l Corp.*, 140 Wn.2d 313, 323, 996 P.2d 598 (2000)). It found that the claims managers' declarations were too conclusory to prove that the manuals compiled the information in an innovative way because they failed to provide concrete examples to illustrate how the Fireman's Fund strategies or philosophies in claims handling were materially different from those of other insurers. *Woo*, 137 Wn. App. at 489-90. The court noted that just because the manuals set forth details and fine points of handling claims does not make them novel. *Woo*, 137 Wn. App. at 489.

¶25 The *Woo* court also emphasized that "[a] trade secret must derive independent economic value from not being known to or generally ascertainable by others who can obtain economic value from their disclosure or use." *Woo*, 137 Wn. App. at 489. It found that Fireman's Fund declarations failed to provide proof that rival companies would want the manuals. *Woo*, 137 Wn. App. at 489. Nor did the declarations quantify in any meaningful way the competetive advantage that a hypothetical plagiarizer would enjoy. *Woo*, 137 Wn. App. at 489.

¶26 And finally, the *Woo* court emphasized that the party seeking to protect documents as trade secrets must show that it has made reasonable efforts to maintain the secrecy of the materials. *Woo*, 137 Wn. App. at 490. It concluded that Fireman's Fund did not make reasonable efforts to

maintain the secrecy of the manuals during trial. *Woo*, 137 Wn. App. at 492-93.

¶27 Here, there is no question that Allstate has made reasonable efforts to maintain the secrecy of the documents at issue. Not only did Allstate refuse to provide the documents without a protective order during pretrial discovery in this case, it has taken similar steps in other litigation involving the same documents. *See, e.g., Allstate Floridian Ins. Co. v. Office of Ins. Regulation*, 981 So. 2d 617 (Fla. Dist. Ct.), *review denied*, 987 So. 2d 79 (Fla. 2008); *Doan v. Allstate Ins. Co.*, 2008 WL 2223123, 2008 U.S. Dist. LEXIS 41072 (E.D. Mich. 2008) (Opinion and Order Den. Def.'s Mot. to Strike Pl.'s Reqs. for Admission and Mot. for Protective Order); *Pincheira v. Allstate Ins. Co.*, 144 N.M. 601, 2008 NMSC 49, 190 P.3d 322; *Tastad*, noted at 86 Wn. App. 1118.

¶28 But making efforts to maintain the documents' secrecy is the only requirement with which Allstate has complied. Similar to the *Woo* declarations, Sullivan's and Bjorback's declarations failed to provide concrete examples to illustrate how Allstate's strategies or procedures in handling claims were materially different from those of its competitors. *See Woo*, 137 Wn. App. at 489. Instead, Sullivan's and Bjorback's declarations consist of conclusory statements that should its competitors gain access to its national policies, the competitors will gain an unfair advantage. And similarly, the declarations provide only conclusory statements that Allstate devoted considerable time, manpower, and finances to developing the documents. Again, the declarations include no specific examples to support these conclusions.

¶29 The conclusory statements and unsubstantiated assertions in Sullivan's and Bjorback's declarations are insufficient to establish the documents contained trade secrets. *See Woo*, 137 Wn. App. at 489. Thus, Allstate did not establish that the documents were trade secrets warranting protection under CR 26(c)(7). *See Woo*, 137 Wn. App. at 489; *Dreiling*, 151 Wn.2d at 916. Nevertheless, we recognize that a trial court has discretion to grant protective orders under CR 26(c). *T.S.*, 157 Wn.2d at 423; *Dreiling*, 151 Wn.2d

at 907. And when the trial court granted the conditional order in this case, it requested copies of all the documents within seven days for in-camera review to determine whether the protective order was necessary. The trial court stated that it would "leave it open," encouraging McCallum to move to vacate the order if, after reviewing the documents, she believed the protective order was not legally sound. 1 Report of Proceedings at 28.

¶30 Though Allstate failed to establish the documents at issue were trade secrets, the trial court balanced the interests of both McCallum and Allstate in determining that a protective order was necessary initially. The trial court recognized that the documents may lead to information relevant to McCallum's bad faith claims. It was also sympathetic to Allstate's contention that the documents were confidential and included proprietary information. Thus, the trial court acted within its discretion when it initially imposed the protective order subject to later review. *See T.S.*, 157 Wn.2d at 423; *Dreiling*, 151 Wn.2d at 907.

## B. Proper Order Vacating Protective Order

¶31 More significantly, it is clear that the trial court exercised proper discretion when it vacated the protective order. During their depositions, Sullivan and Bjorback revealed inconsistencies between their oral testimony and written declarations.

¶32 Again, we review a trial court's discovery order for an abuse of discretion. *T.S.*, 157 Wn.2d at 423; *Dreiling*, 151 Wn.2d at 907. And credibility determinations are for the trier of fact and are not subject to appellate review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶33 Here, the trial court expressed concerns about Bjorback's and Sullivan's declarations based on their inconsistent deposition testimony. It concluded that Bjorback's and Sullivan's declarations were not credible. Furthermore,

Allstate provided no other affidavits[6] with concrete examples of why the trial court should consider the documents to be trade secrets and/or confidential materials. And Allstate had time and opportunity to present other declarations regarding specific prejudice because the trial court indicated so in its proposed decision, but Allstate failed to present any such declarations to meet the harm or specific prejudice test to show good cause.

¶34 Thus, without Sullivan's and Bjorback's declarations, Allstate provided no evidence to support its contention that the documents contained trade secrets and/or confidential information. It simply did not establish good cause. For that reason, the trial court properly vacated the protective order. There was no abuse of discretion. *See T.S.*, 157 Wn.2d at 423; *Dreiling*, 151 Wn.2d at 907.

### C. PROPER ORDER DENYING MOTION FOR RECONSIDERATION

¶35 Likewise, the trial court did not err when it denied Allstate's motion for reconsideration. Allstate moved for reconsideration under CR 59(a), arguing that the trial court abused its discretion, made an error in law, and failed to carry out substantial justice. We review a superior court's ruling on a CR 59 motion for reconsideration under the abuse of discretion standard. *Rivers*, 145 Wn.2d at 685. Because the trial court properly vacated the protective order, it also properly denied Allstate's motion for reconsideration of that order. There was no abuse of discretion.

### II. ATTORNEY FEES

¶36 McCallum seeks attorney fees on appeal, citing RAP 18.1 and RCW 19.86.090. Under RCW 19.86.090, a prevailing CPA plaintiff is entitled to reasonable attorney

---

[6] Allstate's counsel, Marilee Erickson, submitted a personal declaration to support the protection order. But Erickson's declaration did not address the confidentiality of the documents. Rather, it outlined the legal procedure she engaged in during the case and discovery.

fees incurred in pursuing the CPA action. *See Nuttall v. Dowell*, 31 Wn. App. 98, 114-15, 639 P.2d 832, *review denied*, 97 Wn.2d 1015 (1982). Here, McCallum has not prevailed in her claim that Allstate violated the CPA. Thus, she is not entitled to attorney fees under RCW 19.86.090 on this discretionary appeal.

¶37 Affirmed.

VAN DEREN, C.J., and HOUGHTON, J., concur.

Review denied at 166 Wn.2d 1037 (2009).